**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

In re:                                                   **Case No. 95-CV-20512-DT**
                                                         **(Chapter 11)**

    **DOW CORNING CORPORATION**
                                                         **Honorable Denise Page Hood**
      **Debtor,**

    **(LMI Administrative Application).**
_____/

<u>**ORDER REGARDING VARIOUS DISCOVERY MOTIONS**</u>

**I.**    **INTRODUCTION**

This matter is before the Court on eight discovery-related motions filed by both parties. Briefs were filed and oral arguments held on the matter.

Thirty (30) Certain Underwriters at Lloyd's, London and Certain London Market Insurance Companies (collectively, London Market Insurers ("LMI Claimants")) filed an Application for Allowance and Payment of its Administrative Expense Claim filed with the Court on August 12, 2004 under § 503(B) of the Bankruptcy Code, 11 U.S.C. § 503(b). This Administrative Claim is in an amount not less than $91.2 million dollars, plus interest. Each LMI Claimant seeks partial reimbursement under a "clawback" provision in the 1995 Settlement Agreement with Dow Corning Corporation ("Dow Corning") for settlement payments that they made to resolve Dow Corning's insurance coverage lawsuit for breast implant liabilities.

Dow Corning filed an Objection to the Application and a Motion to Dismiss on August 17, 2005 claiming that the Application was not ripe for judicial determination and failed to state a claim upon which relief can be granted. The Court denied the motion in an Order dated June 18, 2007.

On June 27, 2007, the LMI Claimants filed an Amended Application and the matter

proceeded to discovery. In an Order dated October 3, 2008, the Court granted Dow Corning's

motion regarding discovery of the "leaders" and certain four "followers." (10/3/08 Order, p. 7) As

to the Reinsurance-Related Discovery, the Court granted Dow Corning's motion to compel the

production of the reinsurance documents. (10/3/08 Order, pp. 8-9) The Court took under advisement

Dow Corning's Motion to Compel Production of All Documents Relating to the Settlement

Negotiations and the Settlement Agreement At Issue (Doc. Nos. 29935, 29948) because the LMI

Claimants invoked Section VII.B of the Settlement Agreement–the non-waiver provision. The Court

ordered *in camera* production of the documents the LMI Claimants claimed were privilege relating

to the settlement negotiations (in addition to the documents the LMI Claimants submitted to the

Court *in camera* during oral arguments).

After more discovery issues, the Court granted Dow Corning's Motion to Compel

Compliance with the October 3, 2008 Court Order and for Entry of Revised Scheduling Order. The

Court also ordered the LMI Claimants submit to the Court *in camera* all documents they seek to

withhold from Dow Corning based on attorney-client privilege and/or work product (or any other

privilege or theory). (1/30/09 Order, p. 11)

The Court heard oral arguments on the discovery motions on June 12, 2009, along with three

summary judgment motions filed by the parties. This order addresses the discovery-related motions

and the Court's ruling on the summary judgment motions are set forth in a separate order.

## II.    DISCOVERY MOTIONS

### A.    Dow Corning's Motion to Compel Compliance with the Court's October 3, 2008 and January 30, 2009 Orders by Requiring LMI Claimants to Produce Responsive 1999 Reinsurer Communication

Dow Corning argues that the Court has issued two orders requiring the LMI Claimants to

2

produce all responsive communications with reinsurers or reinsurance intermediaries, regardless of whether any claim of privilege otherwise might have been asserted. In a February 20, 2009 letter to the Court, the LMI Claimants sought the Court's advice as to whether they may withhold as privileged a responsive 1999 document that was shared with a reinsurer. The LMI Claimants also sought guidance as to an August 31, 2000 report pursuant to an April 3, 2009 letter to the Court. Dow Corning claims that the Court has ordered production of the documents twice and the documents should be produced immediately.

In response, the LMI Claimants claim that Dow Corning's motion is yet another effort by Dow Corning to use broad language of the Court's Orders to obtain a document that plainly was not within the scope of those orders. The LMI Claimants argue that Dow Corning did not request or move to compel production of documents containing attorney work product concerning the development of this claim, as opposed to documents relating to the 1994-95 settlement negotiations and agreement. The LMI Claimants argue this Court's Orders do not require that the documents be produced. The LMI Claimants claim the law provides that the LMI Claimants and their reinsurers have a common interest in the reimbursement claim and the December 2, 1999 and August 31, 2000 market reports did not lose their privileged status when shared with reinsurers, citing *Front Royal Ins. Co. v. Gold Players, Inc.,* 187 F.R.D. 252 (W.D. Va. 1999) and *Allendale Mut. Ins. v. Bull Data Sys., Inc.,* 152 F.R.D. 132 (N.D. Ill. 1993).

Dow Corning replies that it moved to compel communications between the LMI Claimants and their reinsurers concerning the Settlement Agreement in its November 30, 2007 motion. Given that the LMI Claimants acknowledge that the December 1999 and August 2000 documents now at issue were communicated to at least one reinsurer and relates to the LMI Claimants' purported

"reimbursement rights under the settlement agreement", Dow Corning argues that the document is responsive to Dow Corning's prior motions to compel.

The Court finds that the December 1999 and August 2000 documents now at issue were subject to this Court's prior orders and must be produced by the LMI Claimants to Dow Corning. As to the LMI Claimants' work-product privilege argument, the Court finds that the privilege does not apply to the December 1999 document since the LMI Claimants did not file the reimbursement claim until 2004.

The work-product doctrine protects an attorney's trial preparation materials from discovery to preserve the integrity of the adversarial process. *See Hickman v. Taylor,* 329 U.S. 495-510-14 (1947). The work-product doctrine is a procedural rule under Rule 26 of the Rules of Federal Procedure. *In re Powerhouse Licensing, LLC,* 441 F.3d 467, 472 (6th Cir. 2006). Rule 26(b)(3) protects documents prepared in anticipation of litigation or for trial. Fed. R. Civ. P. 26(b)(3). Two questions are asked to determine whether a document has been prepared in anticipation of litigation: 1) whether the document was prepared "because of" a party's subjective anticipation of litigation, as contrasted with ordinary business purpose; and 2) whether that subjective anticipation was objectively reasonable. *United States v. Roxworthy,* 475 F.3d 590, 594 (6th Cir. 2006). The burden is on the party claiming protection to show that anticipated litigation was the "driving force behind the preparation of each requested document." *Id.* at 595.

The LMI Claimants, acknowledging that the December 1999 documents relate to the LMI Claimants' alleged reimbursement rights under the Settlement Agreement, cannot show that the December 1999 documents were prepared in anticipation of the instant reimbursement claim filed in 2004. The interpretation of the Settlement Agreement containing the reimbursement provision

4

is the main issue in this litigation. The LMI Claimants have not carried their burden to show that the 2004 reimbursement claim litigation was the driving force behind the preparation of the December 1999 documents. Dow Corning's Motion to Compel Compliance with the Court's October 3, 2008 and January 30, 2009 Orders by Requiring LMI Claimants to Produce Responsive 1999 Reinsurer Communication is granted.

**B.      Dow Corning's Motion to Compel Compliance with the Court's October 3, 2008 and January 30, 2009 Orders Regarding Reinsurance-Related Information**

This discovery motion is related to the motion above. In its October 3, 2008 Order, the Court directed the LMI Claimants to produce to Dow Corning any communications between the LMI Claimants and their reinsurers with respect to the Settlement Agreement. (10/3/08 Order, pp. 7-9, 14) The Court granted Dow Corning's Motion to Compel with regards to the reinsurance documents in its January 30, 2009 Order. (1/30/09 Order, p. 8) Dow Corning argues that the documents relating to market reports labeled as "May be available to reinsurers" should also be produced. Dow Corning claims that some market reports are expressly labeled "Should not be shown to reinsurers" whereas some are labeled "May be made available to reinsurers." Dow Corning claims that the LMI Claimants have taken the position that they need only produce market reports where there is evidence, beyond the four corners of a market report, affirmatively indicating that a particular report was in fact shared with reinsurers. Dow Corning argues that with regard to the market reports labeled "May be made available to reinsurers" the LMI Claimants cannot be certain that these reports were not in fact shared with reinsurers.

In response, the LMI Claimants claim that Dow Corning is raising a new argument–whether the labeling of a document can cause it to lose its privileged status. The LMI Claimants argued that the mere presence of the "reinsurer-available" legend on a document does not eliminate the

applicable privileges. The LMI Claimants argue that there is no basis in law to find a waiver of the attorney-client privilege or work product doctrine simply because a document bears a legend indicating that it could be shared with a reinsurer. The LMI Claimants state that they have reasonably determined which documents were shared with a reinsurer. The LMI Claimants claim they have produced all such reports. The LMI Claimants submitted affidavits to support their argument that even though documents contain "reinsurer available" legends, it does not mean that such a report was shared with a reinsurer. The affidavits also state that the "reinsurer available" reports are not provided to reinsurers as a matter of course and that many "reinsurer available" reports are never shared with any reinsurer.

Dow Corning replies that since its motion was filed, the LMI Claimants produced additional market reports and it now appears only two "reinsurer available" market reports are in dispute, dated September 1, 1995 and February 22, 1996. These two documents (and others which Dow Corning is not aware of to date) must be produced, according to Dow Corning. Dow Corning claims the LMI Claimants cannot have "reasonably determined" that these two "reinsurer available" reports were not communicated to any reinsurers. The September 1, 1995 report indicates in a cover letter that "this report has been produced so that it may be made available to reinsurers." (Dow Corning Motion, Ex. M) Dow Corning argues that the LMI Claimants have offered no evidence to justify a conclusion that of the 73 London Market insurers who settled with Dow Corning, not a single one shared the September 1, 1995 report with at least one reinsurer or reinsurance intermediary. The LMI Claimants have not indicated or submitted any affidavit to show that a report labeled "Should not be shown to brokers, reinsurers, auditors, or any other parties" and reports labeled "May be sent to" or "Made available to reinsurers" were not shown to or intended to be shared with third parties.

6

The work product privilege doctrine was addressed above and the same analysis applies. As to the attorney-client privilege doctrine, Michigan law has long recognized the common-law privilege extending to communications between a client and an attorney. *Sterling v. Keiden,* 162 Mich. App. 88 (1987). Generally, the attorney-client privilege is waived by voluntary disclosure of private communications by an individual or corporation to third parties. *In re Columbia/HCA Healthcare Corp., Billing Practices Litigations,* 293 F.3d 289, 294 (6th Cir. 2002). A client may waive the privilege by conduct which implies a waiver of the privilege or a consent to disclosure. *Id.* The burden of establishing the existence of the privilege rests with the person asserting it. *United States v. Dakota,* 197 F.3d 821, 825 (6th Cir. 2000). Claims of attorney-client privilege are narrowly construed because the privilege reduces the amount of information discoverable during the course of a lawsuit. *United States v. Collins,* 128 F.3d 313, 320 (6th Cir. 1997). The privilege applies only where necessary to achieve its purpose and protects only those communications necessary to obtain legal advice. *In re Antitrust Grand Jury,* 805 F.2d 155, 162 (6th Cir. 1986). Litigants cannot hide behind the privilege if they are relying upon privileged communications to make their case. "[T]he attorney-client privilege cannot at once be used as a shield and a sword." *In re Lott,* 139 Fed. Appx. 658, 2005 WL 1515367 (6th Cir. Jun. 22, 2005)(unpublished)(citing *United States v. Bilzerian,* 926 F.2d 1285, 1292 (2d Cir. 1991)).

In this case, the two documents at issue must be produced. As noted previously, the main issue in this litigation is the interpretation of the Settlement Agreement at issue, specifically the reimbursement provision. The Court has previously ruled that Dow Corning is entitled to information given to the reinsurers. Although the LMI Claimants assert that they are "reasonably" certain the two documents at issue were not shared with reinsurers, the fact that the documents are

labeled "reinsurer available" or "may be sent to" or "made available to reinsurers" shows that these documents were not considered private between a client and an attorney. The LMI Claimants apparently knew how to label documents–whether it could or should be shared or not with reinsurers. The Court finds that the attorney-client privilege, if any, was waived as to the two market reports at issue and grants Dow Corning's Motion to Compel Compliance with the Court's October 3, 2008 and January 30, 2009 Orders Regarding Reinsurance-Related Information.

### C. Dow Corning's Motion to Compel LMI Claimants to Provide Release-Adjustment Discovery

Dow Corning seeks an order compelling the LMI Claimants to provide release-adjustment discovery as required by the Settlement Agreement. Dow Corning claims that the clawback provision sets forth a requirement that any "Released Subject Matter under those Subject Contracts of Insurance affected by any such reimbursement will be narrowed accordingly." (Reimbursement Prov., § VI.D) Dow Corning's First Set of Interrogatories requested that each applicant seeking reimbursement identify, with respect to the amount of reimbursement sought, "the release adjustment that each applicant would make, and the method used in calculating each applicant's release adjustment." (DCC Int. No. 1) Interrogatory No. 10 required the LMI Claimants to "describe how you intend to structure your release adjustment of Dow Corning's insurance claims, as required by Section VI.D of the Settlement Agreement if you secure a reimbursement under the clawback provision." (DCC Int. No. 10) Dow Corning claims the LMI Claimants objected to and refused to respond to the requests, taking the position that the requests sought were irrelevant and premature.

The LMI Claimants respond that the information requested is not relevant to the "only" claim in this case, which is the LMI Claimants' claim for reimbursement. The LMI Claimants assert that

how the insurance coverage, or releases, might be adjusted "after" the Court decides the claim is "irrelevant to the only issues presented in this case–whether the London Market Insurers are entitled to reimbursement and in what amount." (LMI Resp., p. 1) The LMI Claimants further argue that the motion seeks information that does not exist until the amount of reimbursement is known. The LMI Claimants contend that Dow Corning has not filed a counterclaim for release adjustment or a release adjustment defense. Finally, the LMI Claimants claim that Dow Corning's discovery request borders on harassment because Dow Corning is fully aware that the releases cannot be adjusted until there is a reimbursement amount.

In its reply, Dow Corning argues that the LMI Claimants seek to avoid their obligation to provide release-adjustment discovery by asserting that the matter before the Court is solely about reimbursement and that the release adjustment has nothing to do with the LMI Claimants' claim for reimbursement, in addition to the LMI Claimants' contention that Dow Corning has not asserted a counterclaim or a release adjustment defense. Dow Corning claims that the plain language of the clawback provision forecloses both arguments. Dow Corning notes that the release adjustment provision is contained in the same paragraph as the request for reimbursement sought by the LMI Claimants. Specifically, the provision states that "[t]he RELEASE Subject matter under those Subject Contracts of Insurance affected by any such reimbursement will be narrowed accordingly. Should the Parties fail to agree upon a reimbursement amount and the adjustment in the Released Subject Matter, the Parties shall invoke the dispute resolution procedures set forth in Section VI.B., above." (Settlement Agreement, VI.D.) Dow Corning argues that the LMI Claimants cannot selectively invoke only part of the clawback provision while ignoring other requirements in the provision.

Rule 26(b)(1) of the Rules of Civil Procedures provides that "parties may obtain discovery regarding any non privileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Fed.R.Civ.P. 33, 34, and 36, respectively, authorize a party to serve on another party interrogatories, requests for production, and requests for admission on another party. A discovery request must meet the threshold relevancy test. See Fed.R.Civ.P. 26(b)(1). Discovery is limited if the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive. Fed. R. Civ. P. 26(b)(2)(C). The Sixth Circuit has held that the scope of examination permitted under Rule 26(b) is broader than that permitted at trial. *Mellon v. Cooper-Jarrett, Inc.,* 424 F.2d 499, 501 (6th Cir. 1970). The test is whether the line of interrogation is reasonably calculated to lead to the discovery of admissible evidence. *Id.* at 500-501. Relevance for discovery purposes is extremely broad. *Miller v. Fed. Express Corp.,* 186 F.R.D. 376, 383 (W.D. Tenn. 1999). The district court has broad discretion to control and restrict discovery where necessary to protect from abuse. See *Herbert v. Lando*, 441 U.S. 153, 177 (1975).

As asserted by the LMI Claimants, "the only issues presented in this case–whether the London Market Insurers are entitled to reimbursement and in what amount." The reimbursement provision expressly states, "[t]he Released Subject matter under those Subject Contracts of Insurance affected by any such reimbursement will be narrowed accordingly." (Settlement Agreement, VI.D.) The next sentence states that if the parties fail to agree "upon a reimbursement amount and the adjustment in the Released Subject Matter, the Parties shall invoke the dispute resolution procedures set forth in Section VI.B., above." (*Id.*) These two sentences in the reimbursement provision, with the language "affected" and considering the reimbursement amount "and" the adjustment together,

10

evidences that the parties intended any adjustment in the Released Subject Matter to be determined with the reimbursement amount. Dow Corning's interrogatories relating to the release adjustment are relevant to the LMI Claimants' claim for reimbursement. As noted above, "the only issues presented in this case–whether the London Market Insurers are entitled to reimbursement and in what amount." Dow Corning's Motion to Compel LMI Claimants to Provide Release-Adjustment Discovery is granted.

### D. LMI's Motion to Compel Production of Documents Over Which Dow Corning has Waived Attorney-Client Privilege and/or Work Product Protection

#### 1. Waiver

The LMI Claimants seek production of non-specific documents over which they claim Dow Corning has waived attorney-client privilege and/or work product protection. The LMI Claimants identify three areas in which they claim Dow Corning has made such a waiver. First, the LMI Claimants claim that Dow Corning has repeatedly waived the attorney-client privilege through the testimony of its outside counsel. The LMI Claimants' motion focused on Scott Gilbert's 1995 testimony, before the Bankruptcy Court, on whether the Settlement Agreement between the parties was reasonable. The LMI Claimants briefly mention the deposition testimony of Marialuisa Gallozzi and footnotes deposition testimony of John Rigas and Edward Rich, negotiators on behalf of Dow Corning. Second, the LMI Claimants assert Dow Corning waived the work product protection regarding the insurance allocations prepared by Sedgwick James for Dow Corning because they were shared with the Tort Claimants' Committee and the London Market Insurers. Finally, the LMI Claimants claim that Dow Corning waived the privilege by providing the Tort Claimants' Committee a draft of Dow Corning's demand letter to the insurers.

Dow Corning responds that it did not waive any attorney-client privilege when Mr. Gilbert

or Ms. Gallozzi testified at their depositions. Dow Corning argues that the Sedgwick James documents are not work product, therefore, sharing these documents with the Tort Claimants' Committee and the London Market Insurers did not waive any privilege. As to sending a letter to the Tort Claimants' Committee regarding a draft letter to its insurers, Dow Corning does not claim a privilege over the draft letter or any letter sent to its insurers, therefore, sharing this document with the Tort Claimants also does not constitute a waiver of any privilege.

The Federal Rules of Evidence Rule 502 provides the extent of a waiver of an attorney-client or work-product communication or information if such a waiver has been found. The notes to the rule provide that the rule "is not intended to displace or modify federal common law concerning waiver of privilege or work product where no disclosure has been made" and is not intended to overturn precedent dealing with implied waiver by the assertion of an advice of counsel defense. *See, Henry v. Quicken Loans, Inc.,* 263 F.R.D. 458, 465 (E.D. Mich. 2008). Before applying Rule 502, a determination must first be made whether a waiver of the privilege or work product has occurred. A privilege may be waived expressly or by implication. *Id.* at 466. Generally, the attorney-client privilege is waived by voluntary disclosure of private communications by an individual or corporation to third parties. *In re Columbia/HCA Healthcare Corp. Billing Practices Lit.,* 293 F.3d 289, 294 (6th Cir. 2002). A client may waive the privilege by conduct which implies a waiver of the privilege or a consent to disclosure. *Id.* The privilege is waived when a client attacks the quality of an attorney's advice or when a party raises a defense based on advice-of-counsel. A claim or defense which places at issue the subject matter of a privileged communication in such a way that a party holding the privilege will be forced to draw upon the privileged material at trial in order to prevail waives the privilege. *In re Lott,* 424 F.3d 446, 453-54 (6th Cir. 2005).

12

"[I]t is the content of the privileged communications that is used as a sword." *Ross v. City of Memphis,* 423 F.3d 596, 604-05 (6th Cir. 2005). Implied waivers are to be construed narrowly and a court "must impose a waiver no broader than needed to ensure the fairness of the proceedings before it." *In re Lott,* 424 F.3d at 453-54. Merely filing a suit that places a party's state of mind at issue is insufficient to constitute a waiver of the attorney-client privilege. *Henry,* 263 F.R.D. at 467. The client must take an affirmative step to waive the privilege such as when the client asserts a claim or defense and attempts to prove that claim or defense by disclosing or describing an attorney-client communication. *Id.* at 468 (citation omitted). An insurance company does not waive the attorney-client privilege by offering the testimony of a former attorney to show that the insurance company had attempted to settle the insured's claim after a suit had been filed as rebuttal evidence to the insured's allegations of bad faith. *Id.* However, "the attorney client privilege cannot at once be used as a shield and a sword." *Id.* (citation omitted). If a client testifies on direct that certain actions were legal, conversations with counsel would directly be relevant in determining the extent of the client's knowledge and his intent. The client cannot later on cross examination assert a privileged communication on matters reasonably related to those developed on direct. *Id.* at 469. When a party asserts a defense of good faith or reasonableness and affirmatively offers testimony that the party consulted with an attorney as factual support for the defense, the client waives the attorney client privilege on the narrow subject matter of those communications. *Id.*

### 2. Scott Gilbert

The LMI Claimants argue that on numerous occasions at a 1995 hearing before the Bankruptcy Court and in Mr. Gilbert's deposition taken on February 17, 2009, he waived the attorney-client privilege. The LMI Claimants seek a broad and blanket subject waiver of the

privilege as to Dow Corning's intent regarding the reimbursement provision. Dow Corning argues that there was no waiver because Dow Corning's counsel explicitly indicated on the record at the 1995 hearing and during the 2009 deposition that Dow Corning was not waiving any privilege.

The Court's review of the 2009 deposition of Mr. Gilbert and the passages cited by the LMI Claimants during the 1995 hearing reveals that Dow Corning did not waive the attorney client privilege. Merely placing Dow Corning's state of mind on the issue of the "assumed amount" set forth on the reimbursement provision does not constitute a waiver of the attorney-client communication. *Henry,* 263 F.R.D. at 267. Construing Mr. Gilbert's testimony during the 1994 hearing narrowly as to waiver, the Court cannot find that Mr. Gilbert went beyond what was necessary for the Bankruptcy Court to make a decision as to the reasonableness of the settlement between Dow Corning and its insurers. The Bankruptcy Court noted that lawyer-negotiator testimony on the reasonableness of a settlement "happens to be the primary way settlements get approved in Court" and "that would be entirely appropriate and as I understand it, routine." (8/10/95 Bankr. Hrg. at 62-63) As to Mr. Gilbert's 2009 deposition, Mr. Gilbert did not affirmatively testify as to his communications with Dow Corning or Dow Corning's communications to him, other than noting his understanding of the numbers upon which the parties had agreed. On several occasions, Dow Corning's counsel asserted the attorney client communications privilege or work product protection. (2/17/09 Gilbert Dep., at 8-9, 20-30, 33-34, 42, 69, 76-77, 91-94, 97-98, 120, 136, 223-24, 248-49, 251-56, 260-62, 268-73, 278-79, 281-82, 318-19) It is clear from Mr. Gilbert's testimony that Dow Corning did not intentionally waive its privilege nor that Mr. Gilbert affirmatively offered testimony regarding the communications between himself and Dow Corning. No privilege was waived when Mr. Gilbert testified to his understanding as to the amount at issue

14

set forth in the reimbursement clause and as to the negotiations and communications between he and the insurers regarding the reimbursement clause.

### 3.  Marialuisa Gallozi

The February 29, 2009 deposition testimony of Ms. Gallozi also shows that Dow Corning asserted the attorney/client privilege and work product protection throughout the deposition.  (Ex. 15, DCC's Resp.)  The Court finds that Dow Corning did not intentionally waive its privilege or any work product information during Ms. Gallozi's deposition.  The Court also finds that Ms. Gallozi did not  affirmatively testify to communications she had with Dow Corning.

### 4.  John Rigas

A review of the few pages of Mr. Rigas' testimony submitted by the LMI Claimants shows he did not reveal any privileged information.  (Ex. D, LMI's motion)  Mr. Rigas, as a representative of Dow Corning, testified as to what Dow Corning's assumptions were during the negotiations. Nothing in his deposition offered affirmative testimony regarding any privileged communications. He was not acting as counsel during the negotiations but was the business financial representative for Dow Corning.

### 5.  Edward Rich

During the 1995 negotiations, Mr. Rich was Dow Corning's Treasurer, not its counsel.  (Ex. C, 2/24/09 Rich Dep., at 169)  The few pages submitted by the LMI Claimants in support of their motion shows that Mr. Rich was testifying as to his personal involvement in the negotiations and drafting of the Settlement Agreement.  (*Id.,* at 82)  The questions posed by the LMI Claimants' counsel focused on discussions between Dow Corning and the LMI Claimants' counsel regarding the settlement negotiations.  (*Id.* at 162)  It is clear from the testimony that Mr. Rich was not going

15

to discuss privileged communications he had with Dow Corning's counsel. *(Id.* at 180)  Dow Corning's counsel also asserted the attorney/client privilege during Mr. Rich's deposition. *(Id.* at 170).  Mr. Rich did not offer any affirmative testimony waiving any privilege or work product protection.

### 6. Sedgwick James Documents

The LMI Claimants argue that Dow Corning waived its privilege and work product protection by disclosing materials generated by Sedgwick James to the Tort Claimants' Committee and the LMI Claimants.  In response, Dow Corning claims it never and does not now assert any privilege as to the documents generated by Sedgwick James.  Dow Corning expressly asserts that the documents prepared by Sedgwick James are not work product.

The Court finds that because Dow Corning does not assert work product protection of the documents generated by Sedgwick James, Dow Corning has not waived any privilege or work product protection by disclosing the documents to the Tort Claimants' Committee and to the LMI Claimants.

### 7. Draft Letter to Insurers

The LMI Claimants argue that Dow Corning waived any privilege by disclosing to the Tort Claimants' Committee a draft letter addressed to the insurers regarding Dow Corning's demand. In response, Dow Corning argues that it does not assert any privilege over the draft letter to the insurers since the letter is not work product or subject to any attorney-client privilege.  Because Dow Corning does not assert any privilege or work product protection to a letter to be sent to the insurers, Dow Corning has not waived any privilege or work product protection by disclosing a copy of the draft letter to the Tort Claimants' Committee.

For the reasons set forth above, the LMI Claimants' Motion to Compel Production of Documents Over Which Dow Corning has waived the Attorney-Client Privilege and/or Work Product Protection is denied, the Court finding that Dow Corning has not waived the privilege or protection.

### E. LMI Claimants' Motion to Compel Production of Communications and Documents Shared with Third Parties

The LMI Claimants seek an order directing Dow Corning to search for and produce: 1) non-privileged communications and documents shared with third parties concerning the reimbursement clause and subjects related to it; 2) non-privileged communications and documents shared with third parties concerning the claim; and 3) privileged communications and documents Dow Corning shared with third parties. (Motion, p. 15) The LMI Claimants state that in 2006, they requested certain documents from Dow Corning. The LMI Claimants now claim that on February 24, 2009, they learned that Dow Corning may have documents on the critical issues in the case that it has not produced or has not searched for or listed on a privilege log.

In response, Dow Corning claims the LMI Claimants waited until February 2009, after five depositions had been taken, to raise for the first time an issue about Dow Corning's production of communications with non-parties. Dow Corning claims that it conducted an extensive search for documents responsive to the LMI Claimants' discovery requests in 2007 and made a substantial document production in response to the requests. Dow Corning withheld two privileged communications regarding the Settlement Agreement that were shared with its owners, the Dow Chemical Company and Corning, Incorporated and included these two communications on its privilege log. The LMI Claimants did not raise any objections regarding these two communications until the instant motion filed in 2009. As to the documents the LMI Claimants assert they recently

learned about, Dow Corning claims they searched in 2009 for any documents responsive to the LMI Claimants' new requests. Dow Corning states no documents which have not been produced were found in its search in 2009. At the hearing, the Court instructed Dow Corning to submit an affidavit addressing the search and such affidavit was submitted to the Court on July 10, 2009 describing Dow Corning's efforts to search the requested documents. "It is well established that in those situations in which the documents sought to be produced are not in existence, a request to produce must be denied." *In re Air Crash Disaster at Detroit Metropolitan Airport,* 130 F.R.D. 641, 646 (E.D. Mich. 1989).

With regards to the LMI Claimants' request for communications and documents which the LMI Claimants learned about in 2009, Dow Corning has submitted an affidavit detailing the search it conducted in 2007 and 2009. Dow Corning has indicated no documents exist, other than the documents it had already produced in response to LMI Claimants' discovery requests back in 2007. The Court is satisfied based on Dow Corning's response brief and the affidavit submitted that it has performed the appropriate searches in order to respond to the LMI Claimants' most recent document Requests.

Addressing the LMI Claimants' argument that Dow Corning should produce documents and communications, the Court notes the Sixth Circuit's "universal rule of law" that the parent and subsidiary share a community of interest, such that the parent, as well as the subsidiary, is the "client" for purposes of the attorney-client privilege. *See Crabb v. KFC Nat'l Management Co.,* 1992 WL 1321 (6th Cir. Jan. 6, 1992) (unpublished) ("The cases clearly hold that a corporate 'client' includes not only the corporation by whom the attorney is employed or retained, but also parent, subsidiary and affiliate corporations.") (citation omitted); *Glidden Co. v. Jandernoa,* 173 F.R.D.

459, 472-73 (W.D. Mich. 1997). An exception to the attorney-client privilege is the shareholder-fiduciary exception. *See Fausek v. White,* 965 F.2d 126 (6th Cir. 2991). The exception is invoked by minority shareholders seeking to access corporate-attorney client communications in a suit vindicating shareholder interests. *Id.* at 130. Where the parent corporation has placed directors on the subsidiary board, corporate directors have access to corporate records and documents, including documents otherwise protected by the corporation's attorney-client privilege. *Glidden*, 173 F.R.D. at 473-74. Although Michigan law provides that an attorney for a corporation does not automatically have an attorney-client relationship with its shareholders and the privilege belongs to the client corporation, the attorney does have a fiduciary duty to the shareholders. *Id.* at 475. The existence of an attorney-client relationship merely establishes a *per se* rule that the lawyer owes fiduciary duties to the client but it does not end the inquiry of whether the attorney owes a duty to the shareholders. *Id.* Courts have repeatedly rejected attempts by members of a subsidiary board of directors from asserting the attorney-client privilege against the parent corporation, to which they owed fiduciary duties. *Id.* at 478.

Given that Dow Corning has a fiduciary duty to its shareholders, it cannot assert the attorney-client privilege against its shareholders, Dow Chemical and Corning. Consequently, Dow Corning cannot waive the attorney-client privilege as to documents and communications Dow Corning's lawyers shared with Dow Corning's shareholders. Documents and communications disclosed by Dow Corning's counsel to its shareholders are not waived since the shareholders are not considered third parties for purposes of waiving the attorney-client privilege. The LMI Claimants liken a joint common privilege with their reinsurers which the Court has found does not exist and has ordered the LMI Claimants to produce the documents disclosed to their reinsurers. The LMI Claimants have

not shown that they owe a fiduciary duty to the reinsurers and have in fact stated that the reinsurers were unrelated third parties. Dow Corning's shareholders are related and affiliated with Dow Corning. The Sixth Circuit has found that a corporation could not assert the attorney-client privilege against a 40% shareholder. In this case, Dow Chemical and Corning are each 50% shareholders of Dow Corning. Dow Corning cannot assert the attorney-client privilege against Dow Chemical and Corning and, therefore, cannot waive such a privilege on their behalf.

For the reasons set forth above, the Court denies the LMI Claimants' Motion to Compel the Production of Communications and Documents Shared with Third Parties.

### F. LMI's Motion to Compel Response to Interrogatory No. 15 Regarding REIMBURSEMENT Methodology

The LMI Claimants seek to compel a response by Dow Corning to Interrogatory No. 15 which asks:

> In the event that the total of the Allocated Expenses, Generic Expenses and Liability Payments attributable to Dow Corning Breast Implant Claims is finally determined to be materially less than the amount actually assumed by the London Market INSURERS in connection with their allocation of shares pursuant to the SETTLEMENT, explain how YOU believe the amount of reimbursement should be determined and/or calculated, what methodology or methodologies YOU believe should be used, the amount of reimbursement YOU believe would be due and how YOU arrived at that amount, broken down on both a policy-by-policy basis and claimant-by-claimant basis.

(Motion, Ex. 10, LMI's 5th Set of Interrogs., No. 15) The LMI Claimants argue that discovery of Dow Corning's reimbursement methodology is relevant and is not premature. The LMI Claimants further argue that Dow Corning has pled a defense and has time and time again in discovery responses and motion papers claimed as its theory that the LMI Claimants' methodologies are incorrect. The LMI Claimants assert that they are entitled to discovery on the main issue underlying

20

the LMI Claimants' claim and the basis for Dow Corning's defense.

Dow Corning responds that it has adequately responded to the contention interrogatory at this stage in the litigation and any supplementation should not be required until fact and expert discovery from the LMI Claimants is complete. Dow Corning claims that the LMI Claimants had previously filed a motion to compel on this same issue which the Court denied without prejudice stating that Dow Corning adequately set forth its position as to why the LMI Claimants are not entitled to reimbursement and that after further discovery Dow Corning must supplement its responses. (10/3/08 Order, p. 12) Dow Corning supplemented its response on March 25, 2009. Even though the LMI Claimants have exceeded the limit on interrogatories set forth in Rule 33(a)(2), Dow Corning responded to Interrogatory No. 15 noting that no amount of reimbursement is due to the LMI Claimants. Dow Corning claims the LMI Claimants thereafter complained that Dow Corning failed to state "what methodology or methodologies" should be used to calculate any reimbursement that may be due and after a meet and confer session, the LMI Claimants filed the instant motion. Dow Corning asserts that the LMI Claimants have yet to produce discovery relevant to this issue, such as the allocation of shares and Dow Corning has not been able to take the depositions of the LMI Claimants' witnesses in order to further understand the LMI Claimants' proposed reimbursement methodology. Dow Corning further asserts that this issue is part of the expert discovery stage which has yet to occur in this proceeding.

Rule 33 of the Rules of Civil Procedure provides that "an interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact." Fed. R. Civ. P. 33(a)(2). Such interrogatories, known as "contention interrogatories," serve legitimate and useful purposes, such as ferreting out unsupportable claims, narrowing the focus and

extent of discovery, and clarifying the issues for trial. *Starcher v. Correctional Med. Sys., Inc.,* 144 F.3d 418, 421 n.2 (6th Cir. 1998). A court may postpone a response to contention interrogatories until discovery is closer to completion. "[B]ut the court may order that the interrogatory need not be answered until designated discovery is complete ..." Fed. R. Civ. P. 33(a)(2). The rule protects the responding party from being hemmed into fixing its position without adequate information. *Strauss v. Credit Lyonnais, S.A.,* 242 F.R.D. 199, 233 (E.D. N.Y. 2007).

The Court finds that Interrogatory No. 15 is relevant to Dow Corning's defense that the LMI Claimants are not entitled to reimbursement and that the LMI Claimants' methodologies are in error. However, the LMI Claimants have the ultimate burden to show that they are entitled to a reimbursement under the reimbursement provision of the Settlement Agreement. Given that the LMI Claimants have not provided the allocation of shares discovery and the depositions have yet to be taken of relevant LMI Claimants' witnesses on the issue of the LMI Claimants' reimbursement methodology, a supplemental response by Dow Corning is not required until after Dow Corning receives adequate information to rebut the LMI Claimants' reimbursement methodology. Dow Corning must then supplement its response. If Dow Corning claims that an expert is required to rebut the LMI Claimants' reimbursement methodology, then Dow Corning need not supplement its response until the expert discovery stage in this matter.

Although the LMI Claimants may have exceeded the required number of interrogatories under the Rules if subparts in their interrogatories were counted, as required by Rule 33(a)(1), Dow Corning waived its objections on this issue since it responded to Interrogatory No. 15. The Court notes that Rule 33(a)(1) requires that the parties either stipulate or seek an order from the Court to exceed the 25 interrogatories requirement.

The Court grants the LMI Claimants' Motion to Compel Response to Interrogatory No. 15 Regarding Reimbursement Methodology. However, Dow Corning need not supplement its response until discovery is complete regarding the LMI Claimants' reimbursement methodology or during the expert discovery stage, if experts are required.

### G. LMI Claimants' Motion to Compel Dow Corning Corporation to Provide Discovery on Expenses that it Seeks to Include in Its Total Loss

#### 1. Discovery Standard

The LMI Claimants seek an order compelling Dow Corning to provide full and complete responses to Request for Production of Documents No. 1 and Interrogatory Nos. 8, 9, 11 and 12. Specifically, the LMI Claimants seek discovery related to the portion of the reimbursement provision which states, "the total of the Allocated Expenses, Generic Expenses and Liability Payments attributable to Dow Corning Breast Implant Claims." (Reimbursement Provision, § VI.D.) In response, Dow Corning claims it has sufficiently responded to the request and interrogatories and appropriately supplemented the responses.

Rule 26(b)(1) provides that parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. Fed. R. Civ. P. 26(b)(1). The scope of discovery is traditionally quite broad. *Lewis v. ACB Business Services, Inc.,* 135 F.3d 389, 402 (6th Cir. 1998). Discovery does have "ultimate and necessary boundaries." *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351 (1978). A court need not compel discovery if the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(2)(iii).

#### 2. Request for Document Production No. 1

The LMI Claimants submitted Document Request No. 1: "All DOCUMENTS RELATING to the GROUND UP LOSS incurred by DCC, either to date or in the future, in connection with the

BREAST IMPLANT CLAIMS." (Motion, Ex. E)

In response to Request No. 1, Dow Corning initially objected to the definition of "Ground Up Loss" as that term does not appear in the Settlement Agreement. (Motion, Ex. F) Dow Corning prepared summaries of its breast implant costs from the early 1990s to the present, in the form of over 1,000 pages of spreadsheets. Dow Corning claims the source of the summaries is an insurance billing system that Dow Corning used to collect cost information relating to its breast implant claims. The costs, according to Dow Corning, were consistent with the Final Judgment of June 1996 in the coverage litigation in Wayne County Circuit Court where the court found that the $350 million of costs presented at trial were for breast implant claims, were reasonable and necessary, qualified as generic defense, case specific defense or liability costs and were covered under the policies issued by the LMI Claimants. Dow Corning claims these costs fall under the definitions of "Generic Expenses," "Allocated Expenses," and "Liability Payments" set forth in the Settlement Agreement. What Dow Corning contends are the Total Ultimate Costs are organized as follows: 1) Pre-filing Defense Expenses and Indemnity Costs of $462,783,695; 2) Post-filing, Pre-Emergence Defense Expenses of $139,561,795; 3) Post-Emergence Defense Expenses of $7,972,528; 4) Interest Paid to Trust of $92,908,572; and, 5) Interest on Trapped Indemnity Costs and Defense Expenses of $40,902,325. Including the funding payment obligations, Dow Corning claims its Total Ultimate Costs are $3.172 billion.

At the LMI Claimants' request, Dow Corning prepared another summary that provided details about the vendors in the post-filing, pre-emergence category that billed at $1 million or higher. Dow Corning also provided a spreadsheet regarding the epidemiology studies requested or commissioned by Dow Corning that are included in its Total Ultimate Costs. Dow Corning has

expressly stated to the LMI Claimants that although most costs in its totals are for breast implant claims, a minor portion are for other silicone product claims. Dow Corning included the totals because such costs are covered under its insurance policies and other insurers are paying them. Dow Corning claims the billing system does not segregate the minor amount of other silicone products claim costs.

Dow Corning claims that the LMI Claimants deposed Maureen Craig, its Rule 30(b)(6) witness on these issues. At all times, including during Ms. Craig's deposition, Dow Corning offered underlying documentation for the LMI Claimants' review. The LMI Claimants now seek to have Dow Corning supplement its response. The LMI Claimants complain that Dow Corning should not have included the costs for non-breast implant claims. The LMI Claimants argue that the costs of "bankruptcy" should not be included. They also seek to exclude any costs for cases that name Dow Chemical, in addition to Dow Corning. Dow Corning responds that the LMI Claimants do not object to the use of the 1,000 pages of spreadsheets. In its reply, the LMI Claimants argue that Dow Corning has not undertaken the analysis required to answer Document Request No. 1 and has used an expense billing system which was not the criteria set forth in the Settlement Agreement.

There is no requirement in the LMI Claimants' Document Request No. 1 that Dow Corning undertake an analysis of the documents requested by the LMI Claimants. Rule 34 does not require a party to perform such an analysis. Rule 34 allows a party to request a party "*produce* and permit the requesting party or its representative *to inspect, copy, test, or sample* ... items in the responding party's possession, custody, or control." Fed. R. Civ. P. 34(a)(1)(italics added). Dow Corning has made available to the LMI Claimants the opportunity to inspect its records which support Dow Corning's spreadsheets submitted to the LMI Claimants. The LMI Claimants have not sought to

copy or inspect the records Dow Corning identified were the basis of its 1000 pages of spreadsheets. If the LMI Claimants seek to review the underlying records, they must so request within 14 days of the entry of this Order.

It appears that the LMI Claimants, in their motion, object to Dow Corning's interpretation of the phrase at issue in the reimbursement provision, "the total of the Allocated Expenses, Generic Expenses and Liability Payments attributable to Dow Corning Breast Implant Claims." (Reimbursement Provision, § VI.D.) If there is a dispute as to the meaning of the phrase and what costs are attributable to the "total," that issue is a question of fact for the trier of fact. Each party may argue what the phrase means and how the particular costs each party claims apply to the phrase. Dow Corning has appropriately responded to the LMI Claimants' Document Request No. 1.

### 3. Interrogatories Nos. 8 and 9

After receipt of Dow Corning's spreadsheets and summaries in response to Document Request No. 1, the LMI Claimants followed up with Interrogatory Nos. 8 and 9 asking:

> 8(a)    for all entries regarding scientific studies, please state who requested or commissioned each study (e.g. what corporate entity, consultant or expert, or law firm), when the study was commissioned, and for what purpose the study was commissioned;
>
> 8(b)    for all entries regarding legal services, please state the nature of the work performed by each firm, the matter(s) for which each was retained, and the person(s) and/or entity(ies) each firm was retained to represent; ...
>
> 9.    [P]lease provide the information for "trapped costs that were incurred pre-filing and paid post-emergence" that YOU provided for "Post-Filing, Pre-Emergence" expenses in DCC-04367-04372 (and that YOU have been requested to provide pursuant to Interrogatory No. 8 above).

(Motion, Ex. K) The LMI Claimants state that Dow Corning served its responses to these

Interrogatories and supplemented these responses with revised spreadsheets. The LMI Claimants argue that the revised spreadsheets provided only cursory descriptions of the nature of each expense.

With regard to the scientific studies, the LMI Claimants claim that the information is necessary to determine whether the studies were commissioned in the ordinary course of Dow Corning's research and development initiatives, which the LMI Claimants argue do not meet the definition of either an allocated or generic expense. The LMI Claimants seek further information as to "who commissioned each study" to determine whether the costs associated with the studies fall under an allocated or generic expense.

As to the law firm information, the LMI Claimants require the information as to the "nature of the work performed by each firm, the matter(s) for which each was retained and the person(s) and/or entity(ies) each firm was retained to represent," to determine whether the claimed legal fees fall within the definitions of allocated and generic expenses "directly attributable" to the defense of breast implant claims. The LMI Claimants assert that Dow Corning does not identify the specific matters–apart from the bankruptcy–for which the firms were retained and does not specify whether the firms were retained to represent any persons or entities other than Dow Corning.

Dow Corning responds that with regards to the scientific studies, Dow Corning produced a spreadsheet showing epidemiology studies included in Dow Corning's costs and indicating that each study was requested or commissioned by Dow Corning. Dow Corning states that the vendor, the "subject" of the study and the year the study was commissioned were listed. The second spreadsheet includes descriptions of services provided by each vendor that conducted the studies. (Resp., Ex. 14) Ms. Craig's deposition testimony provided details and reasons why the studies were conducted in connection with Dow Corning's defense of breast implants. (Resp., Ex. 2, 74-75, 263) Dow

27

Corning claims that as to the law firm information, Dow Corning produced a spreadsheet that states the name of the law firm, a description of services provided regarding breast implant claims, the amount paid to the firm from 1995 to 2004. (Resp., Ex. 12) Dow Corning maintains that it has offered the LMI Claimants the opportunity to review the underlying documentation to support their entries.

The LMI Claimants reply that the supplements to the interrogatories are insufficient and seek an explanation, on an entry-by-entry basis, of why each expense meets the criteria of the Settlement Agreement.

The Court finds that Dow Corning's responses and supplements to Interrogatories Nos. 8 and 9 are sufficient. It is Dow Corning's position that the items they submitted in their spreadsheets meet the criteria of the Settlement Agreement. The LMI Claimants may dispute Dow Corning's position but they may delve into the documents further if they do not agree with Dow Corning's position.

Rule 33(d) provides:

> If the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records (including electronically stored information), and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by:
>
> (1) specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could; and
> (2) giving the interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries.

Fed. R. Civ. P. 33(d). Merely relying on the option to produce business records without specifying

28

the records that must be reviewed with sufficient detail is insufficient. *See Sungjin Fo-Ma, Inc. v. Chainworks, Inc.*, 2009 WL 2022308 * 4 (E.D. Mich. Jul. 8, 2009)(unpublished). "[D]irecting the opposing party to an undifferentiated mass of records is not a suitable response to a legitimate request for discovery." *Id;* quoting *T.N. Taube Corp. v. Marine Midland Mortgage Corp.,* 136 F.R.D. 449, 455 (W.D. N.C. 1991).

Dow Corning has sufficiently detailed and identified the underlying records in their summaries. The LMI Claimants do not dispute the lack of entries but merely object to Dow Corning listing the specific entries. The LMI Claimants may (or may not) be able to glean any other information they seek by examining the underlying documents. The burden of further examining the underlying documents, which Dow Corning has already done, is equal to both parties. The LMI Claimants may review the underlying records to test Dow Corning's position that the entries in their spreadsheets meet the criteria under the Settlement Agreement. Should the LMI Claimants seek such review, they must so request within 14 days from the entry of this Order. It is noted that ultimately, the issue of whether the entries meet the criteria of the Settlement Agreement is for the trier of fact.

### 4. Interrogatory No. 11

The LMI Claimants posed Interrogatory No. 11 to seeking further information related to the one-page summary of spreadsheets Dow Corning produced of its insurance reimbursable costs and expenses:

> 11. Directing YOUR attention to DCC-03310, please state whether YOU contend that the items in the following categories of costs and expenses constitute "Allocated Expenses, Generic Expenses, [or] Liability Payments attributable to Dow Corning Breast Implant Claims" under Section VI.D of the SETTLEMENT:

<blockquote>
(a)     "Pre-Filing Defense Expenses and Indemnity Payments";

(b)     "Post-Filing Pre-Emergence Defense Expenses";

(c)     "Interest Paid to Trust"' and,

(d)     "Interest on Trapped Indemnity and Defense Expenses While in Bankruptcy."

If YOU contend that the items in these categories constitute "Allocated Expenses, Generic Expenses, and Liability Payments attributable to Dow Corning Breast Implant Claims" under Section VI.D. of the SETTLEMENT, please explain whether they constitute "Allocated Expenses," "GENERIC Expenses" or "Liability Payments" and why.
</blockquote>

(Motion, Ex. K) Dow Corning specifically responded to Interrogatory No. 11 by addressing the

subparts:

<blockquote>
a.     Dow Corning contends that most of the costs and expenses included in the category of "Pre-Filing Defense Expenses and Indemnity Costs" are "Allocated Expenses," "Generic Expenses," or "Liability Payments" that are "attributable to Dow Corning Breast Implant Claims." A minor portion of the costs was incurred in connection with other silicone product claims. Dow Corning refers the LMI Claimants to the spreadsheets produced by Dow Corning that provide information concerning these costs and expenses. *See* DCC-04375 to DCC-05060. Dow Corning also refers the LMI Claimants to the relevant definitions and provisions in the Settlement Agreement.

b.     Dow Corning contends that most of the expenses included in the category of "Post-Filing, Pre-Emergence Defense Expenses" are "GENERIC Expenses" or "Allocated Expenses" that are attributable to Dow Corning Breast Implant Claims." A minor portion of the costs was incurred in connection with other silicone product claims. A total of $9,079,130.05 of the costs was credited against the payment obligations due to the Settlement Facility pursuant to the Stipulation and Order dated May 10, 2004. Dow Corning refers the LMI Claimants to the spreadsheets produced by Dow Corning that provide information concerning these costs and expenses. *See* DCC-05061 to DCC-05078. Dow Corning also refers the LMI Claimants to the relevant
</blockquote>

definitions and provisions in the Settlement Agreement.

c.      Dow Corning contends that the interest payments included in the category of "Interest Paid to Trust" are "Liability Payments" that are "attributable to Dow Corning Breast Implant Claims." Dow Corning refers the LMI Claimants to the document produced by Dow Corning that provides information concerning these payments. *See* Bates No. DCC-04373. Dow Corning also refers the LMI Claimants to the relevant definitions and provisions in the Settlement Agreement.

d.      Dow Corning contends that most of the costs and expenses included in the category of "Interest on Trapped Indemnity and Defense Expenses While IN Bankruptcy" are "Allocated Expenses," "Generic Expenses," or "Liability Payments" that are "attributable to Dow Corning Breast Implant Claims." A minor portion of the costs was incurred in connection with other silicone product claims. Dow Corning refers the LMI Claimants to the spreadsheets produced by Dow Corning that provide information concerning these payments. *See* Bates Nos. DCC-4019 to DCC-4341. Dow Corning also refers the LMI Claimants to the relevant definitions and provisions in the Settlement Agreement.

(Motion, Ex. M) Dow Corning claims that the LMI Claimants' request for an item-by-item basis for every cost included in the four cost categories in subparts (a) through (d) is not required by Interrogatory No. 11. This interrogatory merely asks Dow Corning's contentions about whether the items in each category are Allocated Expenses, Generic Expenses, or Liability Payments and why. Dow Corning argues that its answers are responsive to the interrogatories.

In reply, the LMI Claimants argue that the costs and expenses listed by Dow Corning, although related to the bankruptcy costs or the defense of the breast implant claims, are not "directly attributable" to such, as the Settlement Agreement requires and should not be included. The LMI Claimants further argue that Dow Corning has not performed the analysis required by the Settlement Agreement and requested as discovery.

31

Again, the LMI Claimants object to Dow Corning's responses because they dispute the costs listed by Dow Corning as "directly attributable" to the bankruptcy costs or defense of breast implant claims required by the Settlement Agreement. The LMI Claimants' argument goes to the merits of the dispute. As to the analysis the LMI Claimants seek, Interrogatory No. 11 does not request an analysis but merely asks for Dow Corning's contention as to the categories of costs listed by Dow Corning. Dow Corning has answered Interrogatory No. 11.

### 5. Interrogatory No. 12

The LMI Claimants assert that Dow Corning must state whether each item listed on its chart constitutes either an "allocated" or "generic" expense attributable to Dow Corning breast implant claims, as required by the Settlement Agreement, and why. The LMI Claimants claim Dow Corning has completely failed to answer both aspects of this interrogatory. Interrogatory No. 12 states,

> Directing YOUR attention to DCC-04369-04372, please state whether YOU contend that each item listed therein constitutes an "Allocated Expense[], Generic Expense[], [or] Liability Payment[] attributable to Dow Corning Breast Implant Claims" under Section VI.D of the SETTLEMENT. If YOU contend that an item is listed in DCC-04369-04372 constitutes an "Allocated Expense[], Generic Expense[], [or] Liability Payment[] attributable to Dow Corning Breast Implant Claims," please explain whether it is an "Allocated Expense[]," "Generic Expense[]" or "Liability Payment[]" and why.

(Motion, Ex. K)

Dow Corning responds that the LMI Claimants waited over six months to raise this issue. However, at the LMI Claimants' request, Dow Corning informed the LMI Claimants in an April 6, 2009 letter that it hoped "to get this supplemental response to you before the end of the month." (Resp., Ex. 25) On April 30, 2009, Dow Corning claims the LMI Claimants filed the instant motion instead of waiting until they received Dow Corning's supplemental response. Dow Corning claims

that it provided the supplement to Interrogatory No. 12 on May 12, 2009. (Resp., Ex. 26) The response indicated Dow Corning submitted revised spreadsheets:

> The spreadsheet that is Bates numbered DCC-05233 to DCC-05243 provides descriptions of services rendered by vendors with billings over $1 million as listed on the chart "Dow Corning-Post-Filing, Pre-Emergence Non Case Specific-Defense Expenses and Indemnity Payment Report (Revised)." That spreadsheet also states Dow Corning's contention with regard to whether and why the services rendered by each vendor listed thereon constitute "Allocated Expenses," "Generic Expenses," and/or "Liability Payments" that are attributable to Dow Corning Breast Implant Claims. All of the costs and expenses included on the spreadsheet are "Generic Expenses" or "Allocated Expenses" that are "attributable to Dow Corning Breast Implant Claims." ...

(Resp., Exs. 26 and 12 (spreadsheet)).

The LMI Claimants reply that the May 12, 2009 response merely repeats the bald conclusion that the costs are Generic Expenses under the Settlement Agreement's definition. The LMI Claimants argue that many of the expenses noted by Dow Corning should not be included and that Dow Corning has not performed the analysis required by the Settlement Agreement and requested in discovery.

The revised spreadsheets submitted by Dow Corning responds to the LMI Claimants' Interrogatory No. 12 request to state whether or not the noted expenses constitute "Allocated Expenses," "Generic Expenses," and/or "Liability Payments." The LMI Claimants do not believe these expenses fall under the terms of the Settlement Agreement. Again, the LMI Claimants argue the merits whether the costs are within the meaning of the terms of the Settlement Agreement. Interrogatory No. 12 does not ask Dow Corning to perform an analysis but merely requests that Dow Corning expressly note the category to which the costs should be attributed to. Dow Corning has done so in its revised spreadsheets.

For the reasons set forth above, the Court denies the LMI Claimants' Motion to Compel Dow Corning Corporation to Provide Discovery on Expenses that it Seeks to Include in its Total Loss.

### H. The LMI Claimants' Motion for Leave to File *Instanter* Motion Regarding Common Interest Privilege and for Reconsideration and Clarification of January 30, 2009 Order

The LMI Claimants' seek reconsideration and clarification of the Court's January 30, 2009 Order regarding the common interest privilege the Court rejected. This motion was filed on March 26, 2009, outside the ten-day period provided in Local Rule 7.1(g).[1] The LMI Claimants argue that since the Court's order was issued circumstances have changed because Dow Corning is using the Court's Order to try to obtain further discovery, but has also indicated it may be withholding documents on the basis of the very common interest privilege the Court rejected as to the LMI Claimants' documents.

The Local Rules of the Eastern District of Michigan provide that any motion for reconsideration shall be served not later than ten (10) days after entry of such order. E.D. Mich. LR 7.1(g)(1). No response to the motion and no oral argument thereon shall be allowed unless the Court, after filing of the motion, otherwise directs. E.D. Mich. LR 7.1(g)(2). The Local Rule further states:

> (3) **Grounds**. Generally, and without restricting the discretion of the Court, motions for rehearing or reconsideration which merely present the same issues ruled upon by the Court, either expressly or by reasonable implication, shall not be granted. The movant shall not only demonstrate a palpable defect by which the Court and the parties have been misled but also show that a different disposition of the case must result from a correction thereof.

---

[1] Effective March 1, 2010, a motion for rehearing or reconsideration must be filed within 14 days after entry of the judgment or order. E.D. Mich. LR 7.1(h)(1).

E.D. Mich. LR 7.1(g)(3).

       The LMI Claimants' motion is untimely. Even if the Court were to consider the motion, the Court finds that the LMI Claimants merely present the same issues, ruled upon by the Court in its January 30, 2009 Order, either expressly or by reasonable implication. The LMI Claimants have not demonstrated a palpable defect by which the Court and the parties were misled. The LMI Claimants also have not shown that a different disposition of the case would result from a correction of the Order. The LMI Claimants' arguments in this motion are also raised in the motions addressed in this Order. The Court's rulings on those issues are set forth above. As noted by the Court, the common interest privilege raised by Dow Corning as it relates to its shareholders, Dow Chemical and Corning, is in a different posture raised by the LMI Claimants as to their reinsurers. The LMI Claimants' Motion for Leave to File *Instanter* Motion Regarding Common Interest Privilege and for Reconsideration and Clarification of January 30, 2009 Order is denied.

I.    **Dow Corning Revised Motion to Compel Documents regarding Settlement Negotiations and Agreements.**

The Court took this motion under advisement pending the *in camera* production of the unredacted documents to the Court. The Court has reviewed the documents.

The LMI Claimants sought protection of certain documents based on the work-product doctrine. As noted above, Rule 26(b)(3) protects documents prepared in anticipation of litigation or for trial. Fed. R. Civ. P. 26(b)(3). The two questions asked to determine whether a document has been prepared in anticipation of litigation are: 1) whether the document was prepared "because of" a party's subjective anticipation of litigation, as contrasted with ordinary business purpose; and 2) whether that subjective anticipation was objectively reasonable. *Roxworthy,* 475 F.3d at 594. The burden is on the party claiming protection to show that anticipated litigation was the "driving force behind the preparation of each requested document." *Id.* at 595.

The documents submitted by the LMI Claimants to the Court were documents from third-party Peterson Consulting created in 1994-95. It is clear the documents were created during the litigation before the Wayne County Circuit Court and in anticipation of the settlement between the parties in that case. The documents are relevant to the issue before the Court–the interpretation of the reimbursement provision under the Settlement Agreement. Although the documents were work product documents in anticipation of the litigation before the Wayne County Circuit Court, the documents were not prepared in anticipation of *this* litigation. The driving force behind the preparation of the documents in 1994-95 was not the anticipation of *this* litigation filed in 2004. The LMI Claimants must produce the documents from Peterson Consulting set forth in the privilege/work product log submitted to the Court since those documents were not prepared in anticipation of *this* litigation.

36

The Court has reviewed the documents submitted by the LMI Claimants which they claim are subject to the attorney-client privilege. The correspondences from and to the LMI Claimants' counsel are clearly subject to the attorney-client privilege, even if these documents were exchanged or inadvertently produced to Dow Corning during the settlement negotiations in 1994-95 in the Wayne County Circuit Court litigation. Unless the LMI Claimants during the remaining discovery period allege that their interpretation of the reimbursement provision was based on then-counsel's interpretation of the provision, the Court will not order production of these documents. A claim or defense which places at issue the subject matter of a privileged communication in such a way that a party holding the privilege will be forced to draw upon the privileged material at trial in order to prevail. *In re Lott,* 424 F.3d at 453-54. The LMI Claimants cannot use "the content of the privileged communications that is used as a sword." *Ross,* 423 F.3d at 604-05.

Dow Corning's Revised Motion to Compel Production of All Documents Relating to the Settlement Negotiations and the Settlement Agreement at Issue is granted as to the documents designated as work product by the LMI Claimants and denied as to the documents on the LMI Claimants' attorney-client privilege log.

## III. CONCLUSION

For the reasons set forth above,

IT IS ORDERED that Dow Corning's Motion to Compel Compliance with the Court's October 3, 2008 and January 30, 2009 Order by Requiring LMI Claimants to Produce Immediately Responsive 1999 Reinsurance Communications (#29980) is GRANTED.

IT IS FURTHER ORDERED that Dow Corning's Motion to Compel Compliance with the Court's October 3, 2008 and January 30, 2009 Orders Regarding Reinsurance-Related Information

(#29984) is GRANTED.

IT IS FURTHER ORDERED that Dow Corning's Motion to Compel LMI Claimants to Provide Release-Adjustment Discovery (#29985) is GRANTED.

IT IS FURTHER ORDERED that the LMI Claimant's Motion to Compel Production of Documents Over Which Dow Corning has Waived Attorney-Client Privilege an/or Work Product Protection (#29986) is DENIED.

IT IS FURTHER ORDERED that LMI Claimant's Motion to Compel Production of Communications and Documents Shared with Third Parties (#30004) is DENIED.

IT IS FURTHER ORDERED that LMI Claimant's Motion to Compel Response to Interrogatory No. 15 Regarding Reimbursement Methodology (#30013) is GRANTED but Dow Corning need not supplement its answer until after discovery is complete regarding the LMI Claimants' reimbursement methodology or during the expert discovery stage.

IT IS FURTHER ORDERED that LMI Claimant's Motion to Compel Dow Corning to Provide Discovery on Expenses that it Seeks to Include in its Total Loss (#30016) is DENIED. If the LMI Claimants seek to review the underlying documents as offered by Dow Corning, the LMI Claimants must so inform Dow Corning within 14 days from the entry of this Order.

IT IS FURTHER ORDERED that the LMI Clamant's Motion for Leave to File Instanter Motion Regarding Common Interest Privilege and for Reconsideration and Clarification of January 30, 2009 Order (#29995) is DENIED.

IT IS FURTHER ORDERED that Dow Corning's Revised Motion to Compel Documents

regarding Settlement Negotiations (#29938) is GRANTED IN PART and DENIED IN PART.


         _/s/ Denise Page Hood_          
DENISE PAGE HOOD
United States District Judge

DATED:  June 15, 2010