# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## NORTHERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Bankr. Obj. No. 97-0009 |
| | ) | |
| DOW SILICONES CORPORATION | ) | |
| (formerly known as Dow Corning | ) | Bankr. Case No. 95-20512 |
| Corporation), | ) | |
| | ) | Honorable Denise Page Hood |
| Reorganized Debtor. | ) | |

## REORGANIZED DEBTOR'S MOTION FOR ENTRY OF AN ORDER (I) APPROVING A SETTLEMENT AGREEMENT WITH CLASS 4 CLAIMANTS HOLDING PENDENCY INTEREST CLAIMS PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019(a), (II) APPROVING A SETTLEMENT AGREEMENT WITH CLASS 4 CLAIMANTS HOLDING SWAP CLAIMS PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019(a), AND (III) GRANTING RELATED RELIEF

Dow Silicones Corporation, formerly known as Dow Corning Corporation, the above-captioned reorganized debtor ("Dow Corning"[1]), respectfully states as follows in support of this motion (the "Motion"):

### Relief Requested

1.     By this Motion, Dow Corning seeks entry of an order, substantially in the form attached hereto as **Exhibit 1** (the "Order"), (a) approving the proposed settlement between Dow Corning and certain holders of allowed claims in Class 4 of Dow Corning's confirmed plan of reorganization and arising under certain bank loan agreements (the "Pendency Interest Claimants" and together with Dow Corning, the "Pendency Interest Parties") in accordance with the terms of the agreement attached to the Order as **Exhibit A** (the "Pendency Interest Settlement Agreement"), (b) approving the proposed settlement between Dow Corning and certain holders of allowed Class 4 claims arising under four separate Interest Rate and Currency Exchange Agreements (the "Swap Claimants," which are limited to the "CLAIMANTS," as defined in the

---

[1]     On February 1, 2018, Dow Corning Corporation changed its name to Dow Silicones Corporation. For the Court's and parties' convenience, this Motion refers to Dow Silicones as Dow Corning.

Swap Settlement Agreement, and together with Dow Corning, the "Swap Parties") in accordance with the terms of the agreement attached to the Order as **Exhibit B** (the "Swap Settlement Agreement"), and (c) granting related relief.

## Jurisdiction and Venue

2.      The United States District Court for the Eastern District of Michigan (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The bases for the relief requested herein are sections 105(a) and 363(b) of title 11 of the United States Code (the "Bankruptcy Code") and Bankruptcy Rule 9019(a).

## Pendency Interest Dispute and Settlement

**A.      Background**

5.      Dow Corning entered into six unsecured bank loans between the years 1992 and 1994, consisting of (a) a revolving credit agreement (the "Revolver") dated as of November 3, 1993 by and among Dow Corning, Bank of America National Trust and Savings Association as Administrative Agent, and the other financial institutions party thereto, and (b) the following five separate term loan agreements (collectively, the "Term Loans"; together with the Revolver, the "Loans"):

- agreement dated as of November 16, 1992 by and between Dow Corning and Credit Lyonnais Chicago Branch;

- agreement dated as of July 12, 1993 by and between Dow Corning and The First National Bank of Chicago;

- agreement dated as of February 18, 1994 by and between Dow Corning and The Bank of New York;

- agreement dated as of February 24, 1994 by and between Dow Corning and Comerica Bank; and

- agreement dated as of May 26, 1994 by and between Dow Corning and The Bank of Tokyo Trust Company.

2

6.     On May 15, 1995 (the "Petition Date"), Dow Corning filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Eastern District of Michigan (the "Bankruptcy Court"), commencing Bankruptcy Case No. 95-20512 (the "Bankruptcy Case").

7.     The Bankruptcy Court entered orders dated between and including November 30, 1999 and December 21, 1999 (collectively, the "Confirmation Order") confirming Dow Corning's chapter 11 plan (the "Plan"). Upon the conclusion of all appeals of the Confirmation Order, the Plan went into effect on June 1, 2004 (the "Plan Effective Date").

8.     All claims based upon the Loans are included in Class 4 of the Plan.

9.     During the confirmation process, a dispute between Dow Corning and the Pendency Interest Claimants (or their predecessors in interest) arose regarding the rate at which interest on allowed Class 4 claims should accrue between the Petition Date and the Plan Effective Date (the "Pendency Period"), and the allowance of fees, costs and expenses related to Class 4 claims (the "Pendency Interest Dispute").

10.     For more than two decades, the Pendency Interest Parties have been engaged in litigation concerning the Pendency Interest Dispute.

11.     Specifically, concurrent with entry of the Confirmation Order, the Bankruptcy Court ruled on December 1, 1999, that the Plan had been orally modified to pay "Class 4 creditors in accordance with the terms of the parties' contracts," but it did not elaborate on what those "terms" entailed. *In re Dow Corning Corp.*, 244 B.R. 678, 696 (Bankr. E.D. Mich. 1999).

12.     The Pendency Interest Claimants sought to recover default-rate interest under the Loans as a component of their allowed Class 4 claims. Dow Corning filed objections to these interest claims.

3

13.     The Bankruptcy Court ultimately determined that post-petition interest on Class 4 claims during the Pendency Period should be allowed only at the Case Interest Rate as defined in the Plan: 6.28% per annum, compounded on each anniversary of the Petition Date.

14.     The Pendency Interest Claimants and/or their predecessors in interest disputed that the Case Interest Rate was sufficient post-petition interest for the Pendency Period to compensate them in accordance with their contractual and statutory rights, and appealed the Bankruptcy Court's decision to the Court.

15.     The Court affirmed the decision of the Bankruptcy Court, and the Pendency Interest Claimants appealed the Court's decision to the U.S. Court of Appeals for the Sixth Circuit (the "Sixth Circuit").

16.     The Sixth Circuit reversed the decision of the Court, holding (among other things) that "absent compelling equitable considerations, when a debtor is solvent, it is the role of the bankruptcy court to enforce the creditors' contractual rights."  *In re Dow Corning Corp.*, 456 F.3d 668, 679 (6th Cir. 2006).  The Sixth Circuit remanded the case to the Court for further proceedings to determine whether any compelling equitable factors existed that would rebut the "presumption that default interest should be paid to unsecured claim holders in a solvent debtor case."  *Id.* at 680.

17.     Following remand, the Pendency Interest Parties litigated the Pendency Interest Dispute extensively in this Court.  Fact and expert discovery concluded in late 2018, and the Pendency Interest Dispute was set for a bench trial to begin on June 4, 2019.

18.     The Pendency Interest Claimants have asserted aggregate claims for up to $342,079,244 as of March 31, 2019, representing post-petition interest during the Pendency Period at the default rates provided under the Revolver and the Term Loans and/or statutory pre-judgment interest under applicable law (including interest on such interest compounded

4

quarterly, or in the alternative simple statutory pre-judgment interest on such interest), net of distributions paid on the Plan Effective Date, and together with interest accruing after the Pendency Period through March 31, 2019, with such amount continuing to accrue interest. Interest on any award to the Pendency Interest Claimants will continue to accrue because under Section 5.1 of the Plan, interest on any unsatisfied portion of an Allowed Class 4 Claim (as defined in the Plan) that was due and owing on the Plan Effective Date accrues from the Plan Effective Date until the date the award is actually paid at the rate of five percent (5%) per annum compounded semi-annually from the Plan Effective Date.

19.    Dow Corning has asserted legal and factual defenses to the claim of the Pendency Interest Claimants.  Dow Corning generally contends that the Pendency Interest Claimants are not entitled to any post-petition interest during the Pendency Period in addition to interest calculated at the Case Interest Rate, or alternatively that in the event the Claimant Parties are so entitled, the Allowed (as defined in the Plan) amount of such additional interest would be significantly lower than the $342,079,244 through March 31, 2019 that the Pendency Interest Claimants seek.

20.    Dow Corning and the Pendency Interest Claimants engaged in mediation during April and May 2019 before the Honorable Phillip J. Shefferly, Chief Judge of the United States Bankruptcy Court for the Eastern District of Michigan.  The Pendency Interest Parties submitted detailed mediation briefs and supporting exhibits and participated in several mediation sessions before Judge Shefferly, culminating in a proposal to resolve the Pendency Interest Dispute pursuant to the terms set forth in the Pendency Interest Settlement Agreement.  The Pendency Interest Parties have determined that the Pendency Interest Settlement Agreement is in the best interests of both the Pendency Interest Claimants and Dow Corning, particularly given the

lengthy litigation and related costs and risks that will be avoided by virtue of the Pendency Interest Settlement Agreement.

**B.**  **The Pendency Interest Settlement Agreement**

21.  On August 19, 2019, the Pendency Interest Parties entered into the Pendency Interest Settlement Agreement, the key provisions of which include the following terms. Capitalized terms not otherwise defined in this Motion have the respective meanings ascribed to them in the Pendency Interest Settlement Agreement.[2]

- The Pendency Interest Settlement Agreement provides that on the first business day after the 9019 Effective Date, Dow Corning shall pay to the Pendency Interest Claimants (as specified in Section 3 of the Pendency Interest Settlement Agreement) the sum of one hundred and seventy-two million dollars and zero cents ($172,000,000.00) (the "Pendency Interest Settlement Payment") in full and final settlement of the claims asserted against it by the Pendency Interest Claimants and any other person or entity in respect of the Loans.

- The Pendency Interest Settlement Payment shall be allocated among and paid to the Pendency Interest Claimants in accordance with Section 4 of the Pendency Interest Settlement Agreement as follows:

  - The Pendency Interest Settlement Payment shall first be used to pay in full all unpaid claims of the Pendency Interest Claimants under the Revolver and the Term Loans for reimbursement and indemnification of all fees, expenses and costs (including all attorney and expert fees, expenses and costs incurred in connection with the Pendency Interest Dispute) incurred by or on behalf of the Pendency Interest Claimants (such claims, the "Fee Claims" and such payments, the "Fee Payments").  The Fee Payments are currently estimated to total approximately $10 million, although the actual amount could prove to be higher.

  - After all Fee Payments are paid, the remaining balance of the Pendency Interest Settlement Payment (the "Remainder") shall be allocated between the Revolver and the Term Loans such that the portion of the Remainder allocated to the Revolver will result in a recovery (as a percentage of the Revolver Principal Claim of $375,000,000.00) for the Revolver Claimants under the Revolver that is five bond points (i.e., five percentage points (5%)) higher than the recovery (as a

---

[2]  The following description is only a summary and is qualified in its entirety by reference to the Pendency Interest Settlement Agreement attached as Exhibit A to the Order (which Order is attached as Exhibit 1 to this Motion).  The Pendency Interest Settlement Agreement should be reviewed carefully for a complete statement of its terms and conditions.  In the event of any discrepancy between the terms summarized below and the Pendency Interest Settlement Agreement, the Pendency Interest Settlement Agreement shall control in all respects.

6

percentage of the Term Loan Principal Claim of $73,207,975.75) for the Non-Agent Claimants under the Term Loans realized from the remaining portion of the Remainder allocated to the Term Loans. By way of example only, if the Fee Payments total $10 million, the Remainder of $162 million would be allocated between the Revolver and the Term Loans such that $138,602,285.00 would be allocated to the Revolver, representing a recovery of 36.96% of the Revolver Principal Claim of $375,000,000.00 (or 36.96 bond points), and $23,397,715.00 would be allocated to the Term Loans, representing a recovery of 31.96% of the Term Loan Principal Claim of $73,207,975.75 (or 31.96 bond points).

- In accordance with the foregoing, the total portion of the Pendency Interest Settlement Payment that Dow Corning shall pay to Bank of America, as Agent under the Revolver, on the Payment Date shall consist of (i) the portion of the Fee Payments payable to Bank of America to pay in full all Fee Claims incurred by or on behalf of it, plus (ii) the portion of the Remainder allocated to the Revolver. As soon as reasonably practicable after the Payment Date, Bank of America shall distribute the portion of the Remainder allocated to the Revolver, on a pro rata basis, to the Revolver Claimants (defined in the Pendency Interest Settlement Agreement as the record holders of interests in the Revolver, as such holders are set forth on <u>Schedule B</u> to the Pendency Interest Settlement Agreement in the respective amounts and percentages of the Revolver Principal Claim held by such holders as specified on such <u>Schedule B</u>) (for further distribution by such Revolver Claimants, as applicable, directly or indirectly, to the holders of beneficial interests in the Revolver) in accordance with Section 4.d of the Pendency Interest Settlement Agreement and consistent with the terms of the credit agreement for the Revolver.

- The total portion of the Remainder allocated to the Term Loans will be paid only to the Non-Agent Claimants ratably commensurate with the share of the Term Loan Principal Claim held by each such Non-Agent Claimant (as set forth on <u>Schedule A</u> to the Pendency Interest Settlement Agreement). The Term Loan Principal Claim consists of that portion of the aggregate principal balance of $81,957,975.74 outstanding on the Term Loans as of the Petition Date that was asserted in timely proofs of claim by or on behalf of the Non-Agent Claimants, which portion totals $73,207,975.75. The Non-Agent Claimants are the following four entities which hold legal (or record) title and/or beneficial interests (in the case of each Non-Agent Claimant, on behalf of such Non-Agent Claimant and/or certain funds, partnerships or accounts managed, advised and/or controlled directly or indirectly by it and/or on behalf of certain clients, customers or assignees of it) in the Term Loan Principal Claim (as set forth more specifically on <u>Schedule A</u> of the Pendency Interest Settlement Agreement): JPMorgan Chase Bank, N.A.; Midtown Acquisitions L.P., f/k/a DK Acquisition Partners, L.P.; Franklin Mutual Advisers, LLC; and Bardin Hill Investment Partners LP, f/k/a Halcyon Asset Management LLC. In accordance with the foregoing, the total portion of the Pendency Interest Settlement Payment that Dow Corning shall pay to each Non-Agent Claimant on the Payment Date shall consist of (i) the portion of the Fee Payments payable to such Non-Agent Claimant to pay in full all Fee Claims incurred by or on behalf of such Non-Agent Claimant, plus (ii) such Non-

7

Agent Claimant's ratable share of the portion of the Remainder allocated to the Term Loans that is commensurate with the share of the Term Loan Principal Claim held by such Non-Agent Claimant (as set forth on <u>Schedule A</u> to the Pendency Interest Settlement Agreement). For the avoidance of doubt, each Non-Agent Claimant that is, or that holds a legal or beneficial interest through, a Revolver Claimant shall also be entitled to receive such Non-Agent Claimant's ratable share as a Revolver Claimant (or as a holder of a legal or beneficial interest through a Revolver Claimant) of the portion of the Remainder allocated to the Revolver that Bank of America shall distribute pursuant to and in accordance with Section 4.d of the Pendency Interest Settlement Agreement.

- Subject to and conditioned on the occurrence of the 9019 Effective Date and payment in full by Dow Corning of the Pendency Interest Settlement Payment to the Claimant Parties in accordance with Sections 2 and 3 of the Pendency Interest Settlement Agreement, each of the Pendency Interest Claimants shall irrevocably release, acquit, discharge, and covenant not to sue or bring or maintain suit against Dow Corning with respect to any claims arising from or out of the Loans that were or could have been asserted in the Bankruptcy Case or any related case or proceeding (provided that the foregoing shall not release or affect any claim or obligation arising under the terms of the Pendency Interest Settlement Agreement).

- Subject to and conditioned on the occurrence of the 9019 Effective Date and payment in full by Dow Corning of the Pendency Interest Settlement Payment to the Claimant Parties in accordance with Sections 2 and 3 of the Pendency Interest Settlement Agreement, Dow Corning shall irrevocably release, acquit, discharge, and covenant not to sue or bring or maintain suit against any Pendency Interest Claimant or Revolver Claimant with respect to any claims arising from or out of the Loans that were or could have been asserted in the Bankruptcy Case or any related case or proceeding (provided that the foregoing shall not release or affect any claim or obligation arising under the terms of the Pendency Interest Settlement Agreement).

- The Order shall provide that, subject to and conditioned on payment in full of the Pendency Interest Settlement Payment in accordance with Sections 2 and 3 of the Pendency Interest Settlement Agreement, all creditors or potential creditors of Dow Corning (whether known or unknown) are and shall be barred and prohibited from thereafter challenging the Pendency Interest Settlement Agreement and from asserting any claims against Dow Corning in respect of the Revolver and the Term Loans. The obligations of Dow Corning under the Pendency Interest Settlement Agreement are conditioned (among other things) on the grant of such relief in the Order.

- The Order shall provide that, subject to and conditioned on payment in full of the Pendency Interest Settlement Payment in accordance with Sections 2 and 3 of the Pendency Interest Settlement Agreement and the distribution and allocation of the Pendency Interest Settlement Payment as provided in Sections 4.d and 4.e of the Pendency Interest Settlement Agreement: (i) all creditors or potential creditors of Dow Corning (whether known or unknown) are and shall be barred and prohibited from thereafter asserting any claims against the Pendency Interest Claimants (i.e.,

8

Bank of America as Agent under the Revolver and the Non-Agent Claimants) in respect of the Revolver and the Term Loans; and (ii) without limiting the foregoing, Bank of America as Agent under the Revolver and JPMorgan (as defined in the Pendency Interest Settlement Agreement), Citibank, N.A. ("Citibank") and Custodial Trust Company n/k/a JPMorgan Chase Bank, N.A. ("CTC") as the Majority Banks (as defined in the credit agreement for the Revolver) in respect of the Revolver, shall not have or incur any liability for, and are released and exculpated from, any cause of action or any claim of any holder of any interest or claim in respect of the Revolver arising out of or related to the entry into the Pendency Interest Settlement Agreement or any act Bank of America, JPMorgan, Citibank or CTC takes in conformity with the Pendency Interest Settlement Agreement or the Order, including any act taken (or not taken) by Bank of America in compliance with any direction letter(s) provided by the Majority Banks and any act taken (or not taken) by JPMorgan, Citibank and CTC in providing any such direction letter(s), and all holders of any interest or claim in respect of the Revolver are barred and prohibited thereafter from asserting any such causes of action or claims against Bank of America, JPMorgan, Citibank or CTC. The obligations of the Pendency Interest Claimants under the Pendency Interest Settlement Agreement are conditioned (among other things) on the grant of such relief in the Order.

22.     The compromise contemplated by the Pendency Interest Settlement Agreement—obtained through arms'-length negotiations—not only limits Dow Corning's liability with respect to the claims the Pendency Interest Claimants hold against Dow Corning, but inures to the benefit of all Pendency Interest Parties because it avoids the risk, time and expense associated with further protracted litigation.  Accordingly, Dow Corning respectfully requests that the Court approve the Pendency Interest Settlement Agreement and authorize Dow Corning to effectuate the terms of the Pendency Interest Settlement Agreement and undertake all actions necessary to perform thereunder.

**C.     Basis and Request for Approval of Pendency Interest Settlement Agreement**

23.     Bankruptcy Rule 9019(a) provides, in relevant part:

On motion by the [debtor] and after notice and a hearing, the court may approve a compromise or settlement.  Notice shall be given to creditors, the United States trustee, . . . and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

9

24.     Compromises are favored in bankruptcy to avoid the expense and burden associated with litigation.  *See Hindelang v. Mid-State Aftermarket Body Parts Inc.* (*In re MQVP, Inc.*), 477 F. App'x 310, 312 (6th Cir. 2012) (noting that the law favors compromise to avoid the expense and burden associated with litigating contested claims); *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996) ("[t]o minimize litigation and expedite the administration of a bankruptcy estate, '[c]ompromises are favored in bankruptcy.'")(citation omitted).     Indeed, settlements and compromises are "a normal part of the process of reorganization."  *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 424 (1968) (quoting *Case v. Los Angeles Lumber Prods. Co.,* 308 U.S. 106, 130 (1939)).

25.     Courts generally will approve a settlement under Rule 9019 if it is fair and equitable, and in the best interest of the estate.  *See Hindelang*, 477 F. App'x at 313 (citing *Reynolds v. C.I.R.*, 861 F.2d 469, 473 (6th Cir. 1988)); *In re Glieberman*, No. BR 15-55996, 2017 WL 4681805, at *5 (E.D. Mich. Oct. 11, 2017); *In re Miller Parking Co., LLC*, 510 B.R. 123, 128 (E.D. Mich. 2014).  Ultimately, the decision to approve a settlement under Rule 9019 is within the Court's discretion.  *See* Fed. R. Bankr. P. 9019(a); *Hindelang*, 477 F. App'x at 312 (approval of a settlement is within the discretion of the bankruptcy court); *In re Rankin*, 438 F. App'x 420, 426 (6th Cir. 2011) (same).

26.     In determining whether a settlement is fair and equitable, courts in the Sixth Circuit generally consider four factors:

- the probability of success in the litigation;

- the difficulties, if any, to be encountered in the matter of collection;

- the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and

- the interest of the creditors and a proper deference to their reasonable views.

10

*See In re Greektown Holdings, LLC,* 728 F.3d 567, 575 & n.6 (6th Cir. 2013) (citing *Bard v. Sicherman (In re Bard)*, 49 F. App'x 528, 530 (6th Cir. 2002)); *Hindelang*, 477 F. App'x at 313 (applying the factors). In applying these factors, a court "need not hold a mini-trial or write an extensive opinion every time he approves or disapproves a settlement. The judge 'need only apprise himself of the relevant facts and law so that he can make an informed and intelligent decision, and set out the reasons for his decision.'" *Id.* (quoting *In re American Reserve Corp.*, 841 F.2d 159, 163 (6th Cir. 1987)).

27. Importantly, it is well-established that a settlement proponent need not convince the court that a settlement is the best possible compromise, but only that the settlement falls within a range of reasonable compromises. *See In re Fodale*, No. 10-69502, 2013 WL 663729, at *9 (Bankr. E.D. Mich. Feb. 21, 2013); *In re Dow Corning Corp.*, 192 B.R. 415, 421 (Bankr. E.D. Mich. 1996). Indeed, a proposed settlement will satisfy Rule 9019 so long as it does not "'fall[] below the lowest point in the range of reasonableness.'" *In re Dow Corning Corp.*, 198 B.R. 214, 222 (Bankr. E.D. Mich. 1996) (quoting *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983)); *see also, e.g., In re City of Detroit*, 524 B.R. 147, 171-72 (Bankr. E.D. Mich. 2014) (applying range of reasonableness standard in evaluating settlements); *In re Nicole Gas Prod., Ltd.*, 518 B.R. 429, 442-43 (Bankr. S.D. Ohio 2014) (same).

28. The Pendency Interest Settlement Agreement represents a fair and equitable compromise that is in the best interest of the estate and is well within the range of reasonableness given the facts and circumstances. ***First***, the settlement value of the Pendency Interest Dispute—$172 million—is an extensively negotiated compromise that falls within the middle range of the competing claim allowance calculations presented to the Court. Dow Corning believes that it has meritorious factual and legal defenses to the claims asserted by the Pendency Interest Claimants (which total over $342 million in the aggregate), but likewise recognizes that the

11

Pendency Interest Claimants believe that their claims are meritorious, and that litigating those claims to resolution presents significant risks to all parties. The Pendency Interest Parties negotiated the settlement as part of a lengthy mediation before, and with the assistance of, an experienced mediator, Judge Shefferly. **Second**, the Pendency Interest Settlement Agreement resolves more than twenty years of contentious litigation that has delayed a final Plan distribution to the Pendency Interest Claimants and the closing of this chapter 11 case. **Third**, the Pendency Interest Settlement Agreement constitutes a full and final settlement of all claims asserted against Dow Corning with respect to the Loans. And **fourth**, the Pendency Interest Settlement Agreement brings closure for Dow Corning and the Pendency Interest Claimants by providing for the full satisfaction and release of any and all claims by each of the Pendency Interest Parties arising from or out of the Loans that were or could have been asserted in the Bankruptcy Case or any related case or proceeding.

29.     The first settlement factor—the probability of success in the litigation—is satisfied. While Dow Corning is confident in its ability to prevail on the merits in the Pendency Interest Dispute, it also recognizes the inherent uncertainty of any litigation outcome. Furthermore, the costs of trying the disputes (e.g., the fees of attorneys and expert witnesses), and litigating appeals for what would likely be several years to come, would decrease the value of a litigated resolution to Dow Corning and the Pendency Interest Claimants.

30.     The second settlement factor—the difficulties, if any, to be encountered in the matter of collection—also weighs in favor of the Pendency Interest Settlement Agreement. There is no dispute that Dow Corning has funds sufficient to satisfy the settlement amount due to be paid via the Pendency Interest Settlement Agreement. Dow Corning and the Pendency Interest Claimants do not anticipate any difficulties in the matter of collection.

31.     The third settlement factor—the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it—weighs heavily in favor of the Pendency Interest Settlement Agreement.  The complexity of the Pendency Interest Dispute is amply illustrated by the fact that it has been litigated for over twenty years both during and after confirmation of the Plan.  Discovery in the Pendency Interest Dispute was significant, including depositions of fact witnesses followed by expert reports and expert depositions.  The bench trial was expected to last two weeks.  Litigation of this scale has unavoidable costs; over the course of the Pendency Interest Dispute, Dow Corning and the Pendency Interest Claimants have each incurred several million dollars in legal fees and expenses.  Delay is also a significant factor. Following a ruling at trial, appeals could delay final resolution for several years, while interest on these Class 4 claims would continue to accrue at the rate provided for under the Plan.  The Pendency Interest Settlement Agreement affords an important opportunity to avoid these additional costs and delays.  Furthermore, the resolution of the Pendency Interest Dispute via the Pendency Interest Settlement Agreement will enable Dow Corning to seek the prompt closing of the entire chapter 11 case[3] and discontinue the ongoing payments of statutory quarterly fees to the United States Trustee.

32.     Finally, the fourth settlement factor—the interest of creditors and a proper deference to their reasonable views—is satisfied here.  Unlike a Rule 9019 agreement that is entered into before a confirmed plan goes into effect, here Dow Corning emerged from bankruptcy over fifteen years ago.  Since the Plan Effective Date, all Class 4 creditors other than the Pendency Interest Claimants and the Swap Claimants have been paid in full, and the Plan's prescribed treatment of claims in all other Plan Classes has been implemented.  Thus, the

---

[3]     *See* 11 U.S.C. 350(a) ("After an estate is fully administered and the court has discharged the trustee, the court shall close the [chapter 11] case."); Fed. R. Bankr. P. 3022 ("After an estate is fully administered in a chapter 11 reorganization case, the court, on its own motion or on motion of a party in interest, shall enter a final decree closing the case.").

Pendency Interest Settlement Agreement has no effect on any known creditors of Dow Corning's chapter 11 bankruptcy estate that filed timely proofs of claim other than the Pendency Interest Claimants and the Swap Claimants. Moreover, the Pendency Interest Claimants have concluded that the Pendency Interest Agreement—the result of arms'-length negotiations between themselves and Dow Corning—is in their best interests, and the Court should defer to their reasonable view.

33. In addition, the Order appropriately protects and releases the Pendency Interest Parties from the assertion of any claims by any other holder of any interest or claim in respect of the Revolver and the Term Loans. Any such holder either failed to file a timely proof of claim or is deemed to have done so only to the extent that Bank of America as Agent under the Revolver filed a timely proof of claim on behalf of the Revolver Claimants. As Agent, Bank of America entered into the Pendency Interest Settlement Agreement pursuant to direction letters from JPMorgan, Citibank and CTC in their capacity as the Majority Banks (as defined in the credit agreement for the Revolver) in respect of the Revolver. As a general matter, an agent or trustee is entitled, upon the proper direction from holders representing the requisite majority of principal amount under the applicable credit agreement or indenture, to give effect to compromises or settlements on their behalf. *See, e.g.*, *In re Delta Air Lines, Inc.*, 370 B.R. 537, 548 (Bankr. S.D.N.Y. 2007) (finding that "[i]mplicit in the authority to commence proceedings to remedy defaults is the power to negotiate and agree upon settlements, subject to the power to direct in writing by a majority in amount of the Bondholders"). Furthermore, as is common, the Order provides (a) for Bank of America to be released and exculpated from any liability for acting in compliance with the direction of JPMorgan, Citibank and CTC as the Majority Banks to enter into and consummate the Pendency Interest Settlement Agreement, (b) for JPMorgan, Citibank and CTC to be released and exculpated from any liability for giving such direction, and (c) that

14

such direction is binding upon all such parties. The relief requested in the Order barring the assertion of claims in respect of the Loans against the Pendency Interest Parties (and the release and exculpation of Bank of America, JPMorgan, Citibank and CTC from any claim related to any act taken or not taken in compliance with, or in providing, any such direction letter)—which is a condition to such Pendency Interest Parties' obligations to consummate the Pendency Interest Settlement Agreement—is therefore necessary and appropriate and has been approved in other cases. *See, e.g.*, Order Approving The EFIH Settlement ¶ 3(iv), *In re Energy Future Holdings Corp.*, No. 14-10979, Docket No. 11048 (Bankr. D. Del. March 24, 2017).

34. Accordingly, the Pendency Interest Settlement Agreement is fair and equitable and in the best interests of Dow Corning and all of its remaining stakeholders. Dow Corning respectfully requests that the Court approve the Pendency Interest Agreement.

**Swap Interest Dispute and Settlement**

**A.**     **Background**

35. Dow Corning entered into four separate Interest Rate and Currency Exchange Agreements between the years 1988 and 1991 (the "Swap Agreements"):

- agreement dated January 19, 1988, by and between Dow Corning and Citibank, N.A.;

- agreement dated August 2, 1988, by and between Dow Corning and Citibank, N.A., through its Tokyo branch;

- agreement dated April 17, 1990, and an amendment thereto dated May 2, 1995, by and between Dow Corning and Bank of America Illinois, formerly Continental Bank, N.A.; and

- agreement dated March 22, 1991, and an amendment thereto dated May 12, 1995, by and between Dow Corning and Credit Suisse Financial Products.

36. All claims based upon the Swap Agreements are included in Class 4 of the Plan.

37. During the confirmation process, a dispute between Dow Corning and the Swap Claimants (or their predecessors in interest) arose regarding the amount of interest or other fees, costs and expenses owed to the Swap Claimants (the "Swap Interest Dispute").

38. For more than two decades, the Swap Parties have been engaged in litigation concerning the Swap Interest Dispute.

39. The Swap Claimants have asserted an aggregate claim for approximately $16.1 million, representing excess interest, fees, cost and expenses, net of distributions paid on the Plan Effective Date (the "Swap Claims").

40. Dow Corning has filed objections and asserted legal and factual defenses to the Swap Claims. Dow Corning generally contends that the Swap Claimants are not entitled to excess interest, fees, cost and expenses beyond the distributions paid on the Plan Effective Date.

41. Dow Corning and the Swap Claimants have now resolved all disputes relating to the Swap Claims and the Swap Agreements pursuant to the terms set forth in the Swap Settlement Agreement. The Swap Parties have determined that the Swap Settlement Agreement is in the best interests of both the Swap Claimants and Dow Corning, particularly given the lengthy litigation and related costs and risks that will be avoided by virtue of the Swap Settlement Agreement.

**B.    The Swap Settlement Agreement**

42. On August 19, 2019, the Swap Parties entered into the Swap Settlement Agreement, the key provisions of which include the following:[4]

- Within two (2) business days after the Order has become a final order (the "Swap Effective Date"), Dow Corning shall pay to the Swap Claimants (as specified and

---

[4] The following description is only a summary and is qualified in its entirety by reference to the Swap Settlement Agreement attached as Exhibit B to the Order (which Order is attached as Exhibit 1 to this Motion). The Swap Settlement Agreement should be reviewed carefully for a complete statement of its terms and conditions. In the event of any discrepancy between the terms summarized below and the Swap Settlement Agreement, the Swap Settlement Agreement shall control in all respects.

16

allocated among the Swap Claimants in ¶¶ 14 and 19 of the Swap Settlement Agreement) the sum of one million five-hundred thousand dollars and zero cents ($1,500,000.00) (the "<u>Swap Settlement Payment</u>") in full and final satisfaction of the Swap Claims.

- Subject to and conditioned on payment in full of the Swap Settlement Payment to the Swap Claimants and the occurrence of the Swap Effective Date, each of the Swap Claimants, and both Franklin Mutual Advisers, LLC and Chase Lincoln First Commercial Corporation (holders of certain beneficial interests in some of the Swap Claims), shall, severally and not jointly, release Dow Corning from any claim or liability of any type arising from or related to the Swap Claims, or the making of the Plan distribution in the amount of the Swap Settlement Payment to the Swap Claimants, including principal, interest, fees, costs and expenses of any nature and character, heretofore incurred or hereafter to be incurred, by any person based on the Swap Claims.

- In the event any person makes a claim against Dow Corning based on the Swap Claims or the Swap Settlement Payment, each of the Swap Claimants and their successors and assigns, severally and not jointly, for themselves, and for each and every owner and holder of any obligations owing on the Swap Claims, will at all times indemnify and save harmless Dow Corning from and against any and all claims, actions, suits, liabilities, losses, damages, interest, costs, charges, fees (including reasonable attorneys' fees), and other expenses of every nature and character, whether groundless or otherwise, by reason of the Swap Claims or the making of the Plan distribution in the Swap Settlement Amount, or as to any interest in the Swap Claims for which a Swap Claimant received a Plan distribution in June 2004; provided however, that Dow Corning shall not be indemnified for claims or causes of action for actual fraud by Dow Corning.

43.     The compromise contemplated by the Swap Settlement Agreement—obtained through arms'-length negotiations—not only limits Dow Corning's liability with respect to the claims the Swap Claimants hold against Dow Corning, but inures to the benefit of all Swap Parties because it avoids the risk, time and expense associated with further protracted litigation. Accordingly, Dow Corning respectfully requests that the Court approve the Swap Settlement Agreement and authorize Dow Corning to effectuate the terms of the Swap Settlement Agreement and undertake all actions necessary to perform thereunder.

## C.     <u>Basis and Request for Approval of Swap Interest Settlement Agreement</u>

44.     The Swap Settlement Agreement represents a fair and equitable compromise that is in the best interest of the estate and is well within the range of reasonableness given the facts

17

and circumstances. *First*, the settlement value of the Swap Interest Dispute—$1.5 million—fairly accounts for the risks attendant to the respective claims and defenses of the Swap Parties. Dow Corning believes that it has meritorious factual and legal defenses to the Swap Claims (which total over $16 million in the aggregate), but likewise recognizes that the Swap Claimants believe that their claims are meritorious, and that litigating those claims to resolution presents significant risks to all parties. *Second*, the Swap Settlement Agreement brings to a close several years of contentious litigation that has otherwise delayed a final distribution to the Swap Claimants under the Plan. *Third*, the Swap Settlement Agreement constitutes full and final settlement of all claims asserted against Dow Corning with respect to the Swap Agreements. And *fourth*, the Swap Settlement Agreement brings closure for Dow Corning and the Swap Claimants by providing for the full satisfaction and release of any and all claims by each of the Swap Claimants and other beneficial owners of certain Swap Claims (Franklin Mutual Advisers, LLC, and Chase Lincoln First Commercial Corporation) arising from or out of the Swap Agreements, that were or could have been asserted in the Bankruptcy Case or any related case or proceeding.

45. The first settlement factor—the probability of success in the litigation—is satisfied. While Dow Corning is confident in its ability to prevail on the merits in the Swap Interest Dispute, it also recognizes the inherent uncertainty of any litigation outcome. Furthermore, the costs of trying the disputes (e.g., the fees of attorneys and expert witnesses), and litigating appeals for what would likely be several years to come, would decrease the value of a litigated resolution to Dow Corning and the Swap Claimants.

46. The second settlement factor—the difficulties, if any, to be encountered in the matter of collection—also weighs in favor of the Swap Settlement Agreement. There is no dispute that Dow Corning has funds sufficient to satisfy the settlement amount due to be paid via

the Swap Settlement Agreement. Dow Corning and the Swap Claimants do not anticipate any difficulties in the matter of collection.

47. The third settlement factor—the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it—weighs heavily in favor of the Swap Settlement Agreement. The complexity of the Swap Interest Dispute is amply illustrated by the fact that it has been litigated for over twenty years both during and after confirmation of the Plan. The Swap Settlement Agreement affords an important opportunity to resolve these disputes now and avoid the extensive additional costs and delays of further litigation. Furthermore, the resolution of the Swap Interest Dispute via the Swap Settlement Agreement will enable Dow Corning to seek the prompt closing of the entire chapter 11 case.

48. Finally, the fourth settlement factor—the interest of creditors and a proper deference to their reasonable views—is satisfied here. Unlike a Rule 9019 agreement that is entered into before a confirmed plan goes into effect, here Dow Corning emerged from bankruptcy over fifteen years ago. Since the Plan Effective Date, all Class 4 creditors other than the Pendency Interest Claimants and the Swap Claimants have been paid in full, and the Plan's prescribed treatment of claims in all other Plan Classes has been implemented. Thus, the Swap Settlement Agreement has no effect on any known creditors of Dow Corning's chapter 11 bankruptcy estate that filed timely proofs of claim other than the Pendency Interest Claimants and the Swap Claimants. Moreover, the Swap Claimants have concluded that the Swap Settlement Agreement—the result of arms'-length negotiations between themselves and Dow Corning—is in their best interests, and the Court should defer to their reasonable view.

49. Accordingly, the Swap Settlement Agreement is fair and equitable, and in the best interests of Dow Corning and all of its remaining stakeholders. Dow Corning respectfully requests that the Court approve the Swap Settlement Agreement.

19

**Notice**

50.     Dow Corning has provided notice of this Motion and the related Notice of Motion and Opportunity to Object (attached hereto as **Exhibit 2** pursuant to Local Bankruptcy Rule 9014-1(c)(2)) to the Pendency Interest Claimants, the known Revolver Claimants, the Swap Claimants, Franklin Mutual Advisers, LLC, Chase Lincoln First Commercial Corporation, all known prior record and beneficial owners of Class 4 claims arising under the Loans and the Swap Agreements who received Plan distributions on or after the Plan Effective Date, any other known beneficial and/or legal (or record) holders of any portion of the Loans or the claims asserted in the proofs of claim for the Loans, and the United States Trustee through the Court's electronic filing system and/or by overnight delivery.

51.     Further, in the unlikely event that any unknown potential creditor could be affected by the Pendency Interest Settlement Agreement or the Swap Settlement Agreement and the resolution of the Pendency Interest Dispute and the Swap Interest Dispute, Dow Corning will publish notice of the Pendency Interest Settlement Agreement, the Swap Settlement Agreement, this Motion and the objection deadline in *The Wall Street Journal* (National Edition), *The New York Times*, and the *Midland Daily News* on August 20, 2019 (or the soonest possible date(s) thereafter as shall be available from each such publication). A copy of the publication notice is attached hereto as **Exhibit 3**. Dow Corning submits that such publication notice satisfies Constitutional due process requirements as to unknown potential creditors, if any, and requests that the Court so find in the Order. *See Chemetron Corp. v. Jones*, 72 F.3d 341, 348-49 (3d Cir. 1995) ("Publication in national newspapers [*The Wall Street Journal* and *The New York Times*] is regularly deemed sufficient notice to unknown creditors, especially where supplemented, as here, with notice in papers of general circulation in locations where the debtor is conducting business.") (citations omitted); *see also In re Harper*, No. 13-10921, 2017 WL 4159406, at *3

20

(E.D. Mich. Sept. 14, 2017) (noting that publication notice is generally sufficient for unknown creditors); *In re Eagle-Picher Indus., Inc.*, 216 B.R. 611, 615 (Bankr. S.D. Ohio 1997) (same; notice of plan confirmation hearing published in *The Wall Street Journal* and *The New York Times*). In Dow Corning's chapter 11 case, the Bankruptcy Court previously held that Dow Corning's publication of the Bar Date notice, targeted to reach unknown commercial claimants eventually placed in Plan Class 4, in *The Wall Street Journal*, *The New York Times*, the *Detroit Free Press* and the *Midland Daily News* satisfied due process requirements as to such claimants. *See* Order Regarding Debtor's Renewed Motion for Order (1) Setting Bar Date for Filing Proofs of Claim; . . . and (4) Approving Domestic Notice Procedures, dkt. no. 7171 (entered Aug. 7, 1996), at 3, ¶¶ F&G (publication notice program "is adequate, appropriate, and reasonably calculated . . . to provide notice of the Bar Date . . . to (i) any and all creditors and/or potential creditors of DCC, which are currently known or unknown, within the United States . . . and meets the requirements of due process under the United States Constitution.").

52.     Dow Corning submits that the foregoing notice is sufficient as to all known and unknown claimants, and that no other or further notice need be provided.

**Reservation of Rights**

53.     Nothing contained in this Motion, the Pendency Interest Settlement Agreement or the Swap Settlement Agreement or any actions taken by Dow Corning pursuant to the relief granted in the Order is intended or should be construed as (a) an admission as to the validity or amount of any particular claim against Dow Corning as a chapter 11 debtor or reorganized debtor; (b) a waiver of Dow Corning's right to dispute any particular claims on any grounds; (c) a promise or requirement to pay any particular claims or parties (except as provided in the Pendency Interest Settlement Agreement or the Swap Interest Agreement); or (d) a waiver or limitation on Dow Corning's rights under the Bankruptcy Code or applicable law.

## No Prior Request

54.     No prior request for the relief sought in this Motion has been made to this or any other court.

WHEREFORE, Dow Corning respectfully requests that the Court enter the Order, substantially in the form attached hereto as **Exhibit 1**, granting the relief requested in this Motion and granting such other and further relief as is appropriate under the circumstances.

Dated:  August 21, 2019                                   Respectfully submitted,


                                          /s/ *Nader R. Boulos*
                                          Nader R. Boulos, P.C.
                                          KIRKLAND & ELLIS LLP
                                          300 North LaSalle
                                          Chicago, IL 60654
                                          Telephone:  (312) 862-2061

                                          *Attorney for Dow Silicones Corporation*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Bankr. Obj. No. 97-0009 |
| DOW SILICONES CORPORATION | ) | |
| (formerly known as Dow Corning | ) | Bankr. Case No. 95-20512 |
| Corporation), | ) | |
| | ) | Honorable Denise Page Hood |
| Reorganized Debtor | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on August 21, 2019, I filed Dow Silicones Corporation's "Reorganized Debtor's Motion for Entry of an Order (I) Approving a Settlement Agreement With Class 4 Claimants Holding Pendency Interest Claims Pursuant to Federal Rule of Bankruptcy Procedure 9019(a), (II) Approving a Settlement Agreement With Class 4 Claimants Holding Swap Claims Pursuant to Federal Rule of Bankruptcy Procedure 9019(a), and (III) Granting Related Relief," a proposed Order, and a Notice of Motion and Opportunity to Object with the Clerk of the Court using the ECF system, and I caused the foregoing (including all exhibits thereto) to be served as follows:

**By electronic mail:**

Robert S. Hertzberg
Deborah Kovsky-Apap
Pepper Hamilton LLP
4000 Town Center
Suite 1800
Southfield, MI 48074-1505
Email addresses:
hertzber@pepperlaw.com
kovskyd@pepperlaw.com

Daniel J. McGuire
Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601
Email address:
dmcguire@winston.com

Linda Giannattasio
Robert N. Hay
Office of the General Counsel
Citigroup Global Markets Inc.
388 Greenwich Street, 17th Fl.
New York, NY 10013
Email addresses:
Linda.giannattasio@citi.com
robert.n.hay@citi.com

Philip D. Anker
Wilmer Cutler Pickering Hale and Dorr LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Email address:
philip.anker@wilmerhale.com

Andrew J. Markquart
Jacqueline P. Rubin
Paul, Weiss, Rifkind, Wharton &
Garrison LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Email addresses:
amarkquart@paulweiss.com
jrubin@paulweiss.com

Leslie K. Berg
United States Department of Justice
Office of the U.S. Trustee
211 W. Fort St., Suite 700
Detroit, MI 48226
Email address:
Leslie.K.Berg@usdoj.gov

**By electronic mail (cont'd):**

Bank of America, N.A., as Administrative Agent
555 California Street, 4th Floor
Mail Code: CA5-705-04-09
San Francisco, CA 94104
Attn: Liliana Claar, Vice President
Email: Liliana.Claar@bankofamerica.com


**By overnight delivery:**

Pearl Street L.P.
c/o Goldman, Sachs & Co.
Attn: Nancy Unrath
85 Broad Street
New York, NY 10005

Bankers Trust Company
Attn: Joe Regan
130 Liberty Street
14th Floor
New York, NY 10006

Morgan Stanley
Attn: Jacqueline T. Brody
1585 Broadway
New York, NY 10036-8293

Morgan Stanley & Co. Inc.
Attn: Edgard A. Sabounghi
1585 Broadway, 2nd Floor
New York, NY 10036

Angelo, Gordon & Co., L.P.
Attn: Mark Bernstein
245 Park Avenue
New York, NY 10167

Deutsche Bank AG
John Gally
31 West 52nd Street
7th Floor
New York, NY 10019

Patterson Belknap Webb & Tyler LLP
Mary Mulligan
1133 Avenue of the Americas
New York, NY 10036

Deutsche Bank
Attn: Florian Drinhausen
General Counsel
60 Wall Street
New York, NY 10005

Scott L. Esbin
Esbin & Alter, LLP
497 South Main Street
New City, NY 10956

Morgan Stanley Emerging Markets, Inc.
Attn: Ian Sandler and James Morgan
1585 Broadway, 2nd Floor
New York, NY 10036

Paul Haskell
Richards Spears Kibbe & Orbe LLP
One World Financial Center
200 Liberty Street
New York, NY 10281-1003

Appaloosa Management L.P.
Attn: David Bersh
51 John F. Kennedy Pkwy.
Short Hills, NJ 07078

Deutsche Bank AG
Claudia Zou
Mail Stop JCY05-0611
90 Hudson Street
Jersey City, NY 07302

The Royal Bank of Scotland
Juanita Baird
101 Park Avenue
New York, NY 10178

2

Mizuho Corporate Bank, Ltd.
c/o Special Assets Department
Matt Murphy
American Corporate Banking Div #1
1251 Avenue of the Americas
30th Floor
New York, NY 10020

The Royal Bank of Scotland
c/o Lisa Brower
Director, Senior Counsel
NatWest Markets
600 Washington Boulevard
Stamford, CT  06901

Dated:  August 21, 2019

Respectfully submitted,

/s/ *Nader R. Boulos*
Nader R. Boulos, P.C.
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone:  (312) 862-2061

*Attorney for Dow Silicones Corporation*

3

**<u>Exhibit 1</u>**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Bankr. Obj. No. 97-0009 |
| DOW SILICONES CORPORATION | ) | |
| (formerly known as Dow Corning | ) | Bankr. Case No. 95-20512 |
| Corporation), | ) | |
| | ) | Honorable Denise Page Hood |
| Reorganized Debtor. | ) | |

**ORDER APPROVING REORGANIZED DEBTOR'S MOTION
FOR ENTRY OF AN ORDER (I) APPROVING SETTLEMENT
AGREEMENTS WITH CLASS 4 CLAIMANTS PURSUANT TO FEDERAL RULE
OF BANKRUPTCY PROCEDURE 9019(A); AND (II) GRANTING RELATED RELIEF**

(Relates to Docket No. ____)

Upon the motion (the "Motion")[1] of Dow Silicones Corporation, formerly known as Dow

Corning Corporation, the above-captioned reorganized debtor ("Dow Corning"[2]), dated as of

August 21, 2019, for entry of an order (this "Order") (a) approving the Pendency Interest

Settlement Agreement, (b) approving the Swap Settlement Agreement, and (c) granting related

relief, all as more fully set forth in the Motion; and upon this Court's consideration of the

Motion, and no objections having been filed thereto, the Court finds and concludes as follows:

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334,

   and venue of this proceeding and the Motion in this district is permissible pursuant to

   28 U.S.C. §§ 1408 and 1409.

---

[1] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion (or, if not defined therein, as defined in the Pendency Interest Settlement Agreement or the Swap Settlement Agreement).

[2] On February 1, 2018, Dow Corning Corporation changed its name to Dow Silicones Corporation. For the Court's and parties' convenience, this Order refers to Dow Silicones as Dow Corning.

2. The relief requested in the Motion is in the best interests of Dow Corning's estate, its creditors, and other parties in interest, and satisfies all requirements for approval under Bankruptcy Rule 9019(a).

3. Dow Corning's notice of the Motion and opportunity to object to and be heard on the Motion was appropriate under the circumstances and no other notice need be provided. In particular, and without limiting the generality of the foregoing, Dow Corning's publication notice as described in the Motion was adequate and reasonably calculated to provide notice of the Motion, the Pendency Interest Settlement Agreement and the Swap Settlement Agreement to any and all unknown creditors or potential creditors of Dow Corning, and meets the requirements of due process under the United States Constitution.

WHEREFORE, based on the foregoing findings and conclusions; and this Court having determined that the legal and factual bases set forth in the Motion established just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1. The Motion is granted as set forth herein.

2. Dow Corning is authorized to consummate (a) the Pendency Interest Settlement Agreement, attached hereto as **Exhibit A**, and (b) the Swap Settlement Agreement, attached hereto as **Exhibit B**.

3. The Pendency Interest Settlement Agreement and the Swap Settlement Agreement each satisfies the standards of Bankruptcy Rule 9019(a) and each is hereby approved.

4. Dow Corning is authorized to enter into, perform, execute, and deliver all documents, and take all actions, necessary to fully implement each of the Pendency Interest

2

Settlement Agreement and the Swap Settlement Agreement in accordance with their respective terms, conditions, and agreements set forth therein, all of which are hereby approved.

5.     Dow Corning is authorized to pay the Pendency Interest Settlement Payment to the Claimant Parties (as defined in the Pendency Interest Settlement Agreement) in accordance with Sections 2 and 3 of the Pendency Interest Settlement Agreement and the wire instructions to be jointly provided by such Claimant Parties (as so defined) in accordance with Section 3 of such Agreement.  Upon Dow Corning's payment in full of the Pendency Interest Settlement Payment in accordance with the foregoing, such payment shall be a full and final settlement of any and all claims against Dow Corning in respect of the Revolver and the Term Loans, and all creditors or potential creditors of Dow Corning (whether known or unknown) are and shall be barred and prohibited thereafter from challenging the Pendency Interest Settlement Agreement and from asserting any claims against Dow Corning in respect of the Revolver and the Term Loans.

6.     Bank of America as Agent under the Revolver is authorized to distribute the portion of the Remainder (as defined in the Pendency Interest Settlement Agreement) allocated to the Revolver to the Revolver Claimants (as set forth on <u>Schedule B</u> to the Pendency Interest Settlement Agreement) in accordance with Section 4.d of the Pendency Interest Settlement Agreement and the credit agreement for the Revolver.  Upon the distribution and allocation of the Pendency Interest Settlement Payment as provided in Sections 4.d and 4.e of the Pendency Interest Settlement Agreement, (a) all creditors or potential creditors of Dow Corning (whether known or unknown) are and shall be barred and prohibited thereafter from asserting any claims against the Claimant Parties (as defined in the Pendency Interest Settlement Agreement) in respect of the Revolver and the Term Loans, and (b) Bank of America as Agent under the Revolver and JPMorgan (as defined in the Pendency Interest Settlement Agreement), Citibank,

3

N.A. ("Citibank") and Custodial Trust Company n/k/a JPMorgan Chase Bank, N.A. ("CTC") as the Majority Banks (as defined in the credit agreement for the Revolver) in respect of the Revolver, shall not have or incur any liability for, and are released and exculpated from, any cause of action or any claim of any holder of any interest or claim in respect of the Revolver arising out of or related to the entry into the Pendency Interest Settlement Agreement and any act taken in conformity with the Pendency Interest Settlement Agreement or this Order, including any act taken (or not taken) by Bank of America in compliance with any direction letter(s) provided by the Majority Banks and any act taken (or not taken) by JPMorgan, Citibank and CTC in providing any such direction letter(s), and all holders of any interest or claim in respect of the Revolver are barred and prohibited thereafter from asserting any such causes of action or claims against Bank of America, JPMorgan, Citibank or CTC.

7. Subject to and conditioned on the occurrence of the Swap Effective Date (as defined in the Motion), Dow Corning's payment of the Swap Settlement Payment in full to the Swap Claimants under the Swap Settlement Agreement shall be a full and final settlement of any and all claims against Dow Corning in respect of the Swap Claims, and all creditors or potential creditors of Dow Corning (whether known or unknown) are and shall be barred and prohibited thereafter from challenging the Swap Settlement Agreement and from asserting any claims in respect of the Swap Claims against Dow Corning, the Swap Claimants or any holders of beneficial interests in the Swap Claims.

8. Nothing herein shall release or exculpate any party from any cause of action or claim for breach of the Pendency Interest Settlement Agreement or the Swap Settlement Agreement.

9. The terms and conditions of this Order are immediately effective and enforceable upon its entry.

10. Dow Corning is authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

11. Notwithstanding the entry of any final decree and order closing Dow Corning's Chapter 11 case, this Court retains exclusive jurisdiction (including after the entry of any such closing decree) with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order, the Pendency Interest Settlement Agreement and the Swap Settlement Agreement.

Dated: _____, 2019
Detroit, Michigan

_____
DENISE PAGE HOOD
CHIEF U.S. DISTRICT JUDGE

**Exhibit A** to **Exhibit 1**

**Pendency Interest Settlement Agreement**

# SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Agreement") is made and entered into as of August 19, 2019 (the "Execution Date") by and between Dow Silicones Corporation, formerly known as Dow Corning Corporation ("Dow Corning"), and the following parties, who shall be known collectively as the "Claimant Parties":  Bank of America, N.A., successor to Bank of America National Trust and Savings Association, solely in its capacity as Administrative Agent under the Revolver (as defined below) ("Bank of America"); and JPMorgan Chase Bank, N.A. ("JPMorgan"), Midtown Acquisitions L.P., f/k/a DK Acquisition Partners, L.P. ("Midtown Acquisitions"), Franklin Mutual Advisers, LLC ("Franklin Mutual"), and Bardin Hill Investment Partners LP, f/k/a Halcyon Asset Management LLC ("Bardin Hill"), each on behalf of itself and/or certain funds, partnerships or accounts managed, advised and/or controlled directly or indirectly by it and/or on behalf of certain clients, customers or assignees of it.  Dow Corning and the Claimant Parties shall be known collectively as the "Parties," and each may be referred to individually as a "Party".

## RECITALS

This Agreement is entered into with reference to the following facts and recitals, which are true to the best of the Parties' knowledge and belief, and are made a part of this Agreement:

WHEREAS Dow Corning, then operating under the name Dow Corning Corporation, filed a petition for relief under chapter 11 of title 11 of the U.S. Code (the "Bankruptcy Code") on May 15, 1995 (the "Petition Date"), commencing Bankruptcy Case No. 95-20512 (the "Bankruptcy Case") in the U.S. Bankruptcy Court for the Eastern District of Michigan (the "Bankruptcy Court");

WHEREAS, as of the Petition Date, Dow Corning was party to a $400 million revolving Credit Agreement dated as of November 3, 1993 by and among Dow Corning Corporation, Bank of America National Trust and Savings Association as Administrative Agent, Credit Lyonnais as Senior Co-Agent, Banque Nationale De Paris, Continental Bank N.A., The Dai-Ichi Kangyo Bank, Limited, and Royal Bank of Canada as Co-Agents, and the other financial institutions party thereto from time to time as lenders (the "Revolver");

WHEREAS, as of the Petition Date, the outstanding principal balance on the Revolver was $375,000,000.00;

WHEREAS, as of the Petition Date, Dow Corning was party to five separate term loan agreements, consisting of the term loan agreement dated as of November 16, 1992 by and between Dow Corning and Credit Lyonnais Chicago Branch (the "Credit Lyonnais Term Loan"), the term loan agreement dated as of February 18, 1994 by and between Dow Corning and The Bank of New York (the "Bank of New York Term Loan"), the term loan agreement dated as of July 12, 1993 by and between Dow Corning and The First National Bank of Chicago (the "FNBC Term Loan"), the term loan agreement dated as of May 26, 1994 by and between Dow Corning and The Bank of Tokyo Trust Company (the "Bank of Tokyo Term Loan"), and the term loan agreement dated as of February 24, 1994 by and between Dow Corning and Comerica Bank (the "Comerica Term Loan", and collectively with the Credit Lyonnais Term Loan, the

Bank of New York Term Loan, the FNBC Term Loan, and the Bank of Tokyo Term Loan, the "Term Loans");

WHEREAS, as of the Petition Date, the aggregate outstanding principal balance on the Term Loans was $81,957,975.74;

WHEREAS the credit agreements for the Revolver and the Term Loans contain provisions requiring Dow Corning to reimburse and indemnify the Claimant Parties for all fees, costs and expenses (including the reasonable fees and disbursements of counsel) incurred by them in connection with the enforcement, performance and/or administration of the agreements;

WHEREAS, on January 9, 1997, Bank of America, N.A. as Agent under the Revolver, filed in the Bankruptcy Case Proof of Claim No. 0276784-00 and subsequently amended that Proof of Claim, including by filings dated July 24, 2009, July 28, 2009, and September 17, 2009 (the "Revolver Proof of Claim"), in which it asserted a general unsecured claim on behalf of itself and the financial institutions from time to time party to the Revolver for, among other things, (i) a pre-petition claim in the amount of $377,348,294.43, representing the outstanding principal balance of $375,000,000.00 (the "Revolver Principal Claim"), plus unpaid interest and fees owing on the Revolver as of the Petition Date, and (ii) post-petition interest (at the default rate under the Revolver during the Pendency Period, as defined below, as calculated in accordance with the Revolver and applicable law), fees and expenses;

WHEREAS, on various dates (including June 16, 1995, October 13, 1995, and January 11, 1997), Proofs of Claim were filed in the Bankruptcy Case, including Proofs of Claim Nos. 0000025, 0017425, 0299794, 0299779 and 0299782, as subsequently amended, including by filings dated November 19, 2007 and July 27, 2009 (the "Term Loan Proofs of Claims"), asserting claims under the Term Loans for, among other things, (i) the outstanding principal balance (and any interest) owing as of the Petition Date on the portions of the Term Loans in which one or more of the Non-Agent Claimants (as defined below) holds legal (or record) title and/or beneficial interests (on behalf of each such Non-Agent Claimant and/or certain funds, partnerships or accounts managed, advised and/or controlled directly or indirectly by it and/or on behalf of certain clients, customers or assignees of it) in an aggregate principal amount (as set forth more specifically on Schedule A of this Agreement) for all four Non-Agent Claimants collectively of $73,207,975.75 (the "Term Loan Principal Claim"), and (ii) post-petition interest (at the default rate under the respective Term Loans during the Pendency Period, as defined below, as calculated in accordance with such Term Loans and applicable law), fees and expenses;

WHEREAS, from time to time, JPMorgan, Midtown Acquisitions, Franklin Mutual and Bardin Hill (each on behalf of itself and/or certain funds, partnerships or accounts managed, advised and/or controlled directly or indirectly by it and/or on behalf of certain clients, customers or assignees of it) acquired interests in the Revolver and/or some or all of the Term Loans (or in claims thereunder);

WHEREAS the Bankruptcy Court entered orders dated between and including November 30, 1999 and December 21, 1999 confirming a plan of reorganization for Dow Corning (as amended and/or modified, the "Plan") in the Bankruptcy Case;

WHEREAS the effective date of the Plan occurred on June 1, 2004 (the "Plan Effective Date");

WHEREAS Dow Corning filed objections to the Revolver Proof of Claim and the Term Loan Proofs of Claim (collectively, the "Claims");

WHEREAS the Bankruptcy Court ultimately determined that post-petition interest on the Claims during the period between the Petition Date and the Plan Effective Date (the "Pendency Period") should be paid at a rate of 6.28% per annum, compounded on each anniversary of the Petition Date (the "Case Interest Rate");

WHEREAS, on (or shortly after) the Plan Effective Date, Dow Corning paid in full the principal balance and any pre-petition interest that accrued on the Revolver and the Term Loans, as well as post-petition interest for the Pendency Period at the Case Interest Rate;

WHEREAS the Claimant Parties and/or their predecessors-in-interest disputed that the Case Interest Rate was sufficient post-petition interest for the Pendency Period to compensate them in accordance with their contractual and statutory rights, and appealed the Bankruptcy Court's decision to the United States District Court for the Eastern District of Michigan (the "District Court");

WHEREAS the District Court affirmed the decision of the Bankruptcy Court, and the Claimant Parties appealed the District Court's decision to the U.S. Court of Appeals for the Sixth Circuit (the "Sixth Circuit");

WHEREAS the Sixth Circuit reversed the decision of the District Court, holding (among other things) that "absent compelling equitable considerations, when a debtor is solvent, it is the role of the bankruptcy court to enforce the creditors' contractual rights." *In re Dow Corning Corp.*, 456 F.3d 668, 679 (6th Cir. 2006);

WHEREAS the Sixth Circuit remanded the case to the District Court for further proceedings to determine whether any compelling equitable factors existed that would rebut the "presumption that default interest should be paid to unsecured claim holders in a solvent debtor case." *Id.* at 680;

WHEREAS litigation between the Claimant Parties and Dow Corning has continued in the District Court (which withdrew the reference of the Bankruptcy Case from the Bankruptcy Court by an order entered on December 17, 2001) on remand regarding the claim for post-petition interest, including both the Claimant Parties' entitlement to default rate interest and the manner in which any post-petition interest is calculated (the "Remand Litigation");

WHEREAS the Parties agree that, pursuant to Section 5.1 of the Plan, interest on any unsatisfied portion of an Allowed Class 4 Claim (as defined in the Plan) that was due and owing on the Plan Effective Date accrues from the Plan Effective Date until the date distribution is actually made at the rate of five percent (5%) per annum compounded semi-annually from the Plan Effective Date;

3

WHEREAS the Claimant Parties have asserted that they are entitled to post-petition interest during the Pendency Period at the default rates provided under the Revolver and the Term Loans and/or statutory pre-judgment interest under applicable law (including interest on such interest compounded quarterly, or in the alternative simple statutory pre-judgment interest on such interest) and that the aggregate claim of the Claimant Parties for such post-petition interest, net of distributions paid on the Plan Effective Date, and together with interest accruing after the Pendency Period through March 31, 2019, is $342,079,244.00, with such amount continuing to accrue interest;

WHEREAS Dow Corning has disputed whether the Claimant Parties are entitled to post-petition interest at the default rates provided under the Revolver and the Term Loans during the Pendency Period in addition to interest calculated at the Case Interest Rate, the manner in which any default-rate interest to which the Claimant Parties might be entitled should be calculated under the Revolver and Terms Loans and applicable law, and whether the Claimant Parties are entitled to statutory pre-judgment interest;

WHEREAS Dow Corning has asserted that the Claimant Parties are not entitled to any post-petition interest during the Pendency Period in addition to interest calculated at the Case Interest Rate, or alternatively that in the event the Claimant Parties are so entitled, the Allowed (as defined in the Plan) amount of such additional interest would be significantly lower than the $342,079,244.00 through March 31, 2019 asserted by the Claimant Parties;

WHEREAS the Claimant Parties have asserted, and Dow Corning has disputed, claims for professional fees, expenses and costs that the Claimant Parties have incurred in litigating the matters resolved in this Agreement;

WHEREAS the Parties completed fact and expert discovery and were scheduled to begin trial in the Remand Litigation in June 2019;

WHEREAS by order dated January 22, 2019 (Bankr. Obj. No. 97-0009, ECF No. 686), the District Court appointed The Honorable Phillip J. Shefferly, Chief Judge of the United States Bankruptcy Court for the Eastern District of Michigan, to act as mediator (the "Mediator");

WHEREAS the Parties submitted to the Mediator detailed mediation briefs and supporting exhibits and participated in several mediation sessions before the Mediator, culminating in a proposal to resolve their disputes in the Remand Litigation pursuant to the terms set forth in this Agreement; and

WHEREAS the Parties agree that it is in their mutual interests to avoid the uncertainty, expense and delay of further litigation by reaching a settlement of the foregoing disputes in accordance with the terms and conditions set forth in this Agreement;

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

**TERMS**

1. **Definitions.** As used in this Agreement and for purposes of this Agreement only, the following terms have the following meanings:

   "Agreement" has the meaning ascribed to it in the Preamble.

   "Bank of America" has the meaning ascribed to it in the Preamble.

   "Bankruptcy Case" has the meaning ascribed to it in the Recitals.

   "Bankruptcy Court" has the meaning ascribed to it in the Recitals.

   "Case Interest Rate" has the meaning ascribed to it in the Recitals.

   "Citibank" shall mean Citibank, N.A.

   "Claims" has the meaning ascribed to it in the Recitals.

   "Claimant Party" or "Claimant Parties" have the meaning ascribed to them in the Preamble.

   "CTC" shall mean Custodial Trust Company n/k/a JPMorgan Chase Bank, N.A.

   "District Court" has the meaning ascribed to it in the Recitals.

   "Dow Corning" has the meaning ascribed to it in the Preamble.

   "Execution Date" has the meaning ascribed to it in the Preamble.

   "Fee Claims" has the meaning ascribed to it in Section 4.a.

   "Fee Payments" has the meaning ascribed to it in Section 4.a.

   "Final Order" has the meaning ascribed to it in Section 6.d.

   "Including" or "includes" are not limiting and mean "including, without limitation."

   "Non-Agent Claimants" shall mean JPMorgan, Midtown Acquisitions, Franklin Mutual, and Bardin Hill, each on behalf of itself and/or certain funds, partnerships or accounts managed, advised and/or controlled directly or indirectly by it and/or on behalf of certain clients, customers or assignees of it.

   "Party" or "Parties" have the meaning ascribed to them in the Preamble.

   "Payment Date" shall mean the first business day after the 9019 Effective Date.

   "Pendency Period" has the meaning ascribed to it in the Recitals.

5

"Plan" has the meaning ascribed to it in the Recitals.

"Plan Effective Date" has the meaning ascribed to it in the Recitals.

"Reimbursement Payments" has the meaning ascribed to it in Section 2.

"Remainder" has the meaning ascribed to it in Section 4.b.

"Remand Litigation" has the meaning ascribed to it in the Recitals.

"Revolver" has the meaning ascribed to it in the Recitals.

"Revolver Claimants" shall mean the record holders of interests in the Revolver, as such holders are set forth on Schedule B to this Agreement in the respective amounts and percentages of the Revolver Principal Claim held by such holders as specified on such Schedule B.

"Revolver Principal Claim" has the meaning ascribed to it in the Recitals.

"Rule 9019 Motion" has the meaning ascribed to it in Section 6.a.

"Rule 9019 Order" has the meaning ascribed to it in Section 6.c.

"Settlement Payment" has the meaning ascribed to it in Section 2.

"Term Loan Principal Claim" has the meaning ascribed to it in the Recitals.

"Term Loans" has the meaning ascribed to it in the Recitals.

"9019 Effective Date" shall mean the first date on which the Rule 9019 Order has become a Final Order.

2. **Settlement Payment.** On the Payment Date, Dow Corning shall pay to the Claimant Parties (as specified in Section 3 hereof) the sum of one hundred and seventy-two million dollars and zero cents ($172,000,000.00) (the "Settlement Payment"). Together with amounts already paid by Dow Corning for reimbursement of fees and expenses, including legal fees, to Bank of America in respect of its right to indemnification during the pendency of the Remand Litigation (the "Reimbursement Payments"), the Settlement Payment is in full and final settlement of all claims asserted against it by the Claimant Parties in respect of the Revolver and the Term Loans. With respect to the Revolver, the Settlement Payment represents a compromise of the dispute, and not a reduction in interest or fees under the Revolver. Dow Corning acknowledges and agrees that Bank of America shall be entitled to retain the Reimbursement Payments, and that the Settlement Payment is in addition to the Reimbursement Payments.

3. **Delivery of the Settlement Payment.** Dow Corning shall pay the Settlement Payment to the Claimant Parties by delivering the Settlement Payment, by wire transfers in immediately available funds, in accordance with instructions to be jointly provided by the

6

Claimant Parties no later than two (2) business days before the Payment Date that specify the portion of the Settlement Payment payable to each Claimant Party (i.e., to each of Bank of America, JPMorgan, Midtown Acquisitions, Franklin Mutual and Bardin Hill) in accordance with the allocation of the Settlement Payment set forth in Section 4 of this Agreement.

4. **Allocation of the Settlement Payment.** The Settlement Payment shall be allocated between and among the Claimant Parties as follows:

   a. The Settlement Payment shall first be used to pay in full all unpaid claims of the Claimant Parties under the Revolver and the Term Loans for reimbursement and indemnification of all fees, expenses and costs (including all attorney and expert fees, expenses and costs incurred in connection with the Remand Litigation) incurred by or on behalf of the Claimant Parties (such claims, the "Fee Claims" and such payments, "the Fee Payments"). The aggregate Fee Payments are currently estimated to amount to approximately ten million dollars ($10,000,000.00), although such amount is only an estimate and shall not limit or cap the amount paid pursuant to this paragraph.

   b. The portion of the Settlement Payment remaining after the payment in full of all Fee Payments described in Section 4.a of this Agreement shall be known as the "Remainder".

   c. The Remainder shall be allocated between the Revolver and the Term Loans such that the portion of the Remainder allocated to the Revolver will result in a recovery (as a percentage of the Revolver Principal Claim) for the Revolver Claimants, as expressed in bond points, that is five bond points (i.e., five percentage points) higher than the recovery (as a percentage of the Term Loan Principal Claim) for the holders of claims under the Term Loans asserted by the Non-Agent Claimants that will be realized from the remaining portion of the Remainder allocated to the Term Loans. By way of example only, if the Fee Payments total $10,000,000.00, such that the Remainder totals $162,000,000.00, $138,602,285.00 of the Remainder shall be allocated to the Revolver, representing a recovery of 36.96% of the Revolver Principal Claim of $375,000,000.00 (or 36.96 bond points), and $23,397,715.00 of the Remainder shall be allocated to the Term Loans, representing a recovery of 31.96% of the Term Loan Principal Claim of $73,207,975.75 (or 31.96 bond points).

   d. In accordance with Sections 4.a, 4.b and 4.c of this Agreement, the total portion of the Settlement Payment that Dow Corning shall pay to Bank of America on the Payment Date (as specified in the joint instructions to be provided by the Claimant Parties to Dow Corning pursuant to Section 3 of this Agreement) shall consist of (i) the portion of the Fee Payments payable to Bank of America to pay in full all Fee Claims incurred by or on behalf of Bank of America, plus (ii) the portion of the Remainder allocated to the Revolver. As soon as reasonably practicable after the Payment Date, Bank of America shall distribute the portion of the Remainder allocated to the Revolver, on a pro rata basis, to the Revolver

7

Claimants (for further distribution by such Revolver Claimants, as applicable, directly or indirectly, to the holders of beneficial interests in the Revolver) commensurate with the respective amounts and percentages of the Revolver Principal Claim held by such Revolver Claimants (as set forth on Schedule B to this Agreement) and consistent with the terms of the credit agreement for the Revolver.

e. In accordance with Sections 4.a, 4.b and 4.c of this Agreement, the total portion of the Settlement Payment that Dow Corning shall pay to each Non-Agent Claimant (i.e., to each of JPMorgan, Midtown Acquisitions, Franklin Mutual, and Bardin Hill) on the Payment Date (as specified in the joint instructions to be provided by the Claimant Parties to Dow Corning pursuant to Section 3 of this Agreement) shall consist of (i) the portion of the Fee Payments payable to such Non-Agent Claimant to pay in full all Fee Claims incurred by or on behalf of such Non-Agent Claimant, plus (ii) such Non-Agent Claimant's ratable share of the portion of the Remainder allocated to the Term Loans that is commensurate with the share of the Term Loan Principal Claim held by such Non-Agent Claimant (as set forth on Schedule A to this Agreement). For the avoidance of doubt, each Non-Agent Claimant that is, or that holds a legal or beneficial interest through, a Revolver Claimant shall also be entitled to receive such Non-Agent Claimant's ratable share as a Revolver Claimant (or as a holder of a legal or beneficial interest through a Revolver Claimant) of the portion of the Remainder allocated to the Revolver that Bank of America shall distribute pursuant to and in accordance with Section 4.d of this Agreement.

5. **Releases**

a. Subject to and conditioned on the occurrence of the 9019 Effective Date and payment in full by Dow Corning of the Settlement Payment to the Claimant Parties in accordance with Sections 2 and 3 of this Agreement, each of the Claimant Parties, for itself and its present and former officers, directors, employees, agents, assigns, predecessors, representatives, subsidiaries, affiliates, and divisions, forever and irrevocably releases, acquits, discharges, and covenants not to sue or bring or maintain suit against Dow Corning, and its present and former officers, directors, employees, agents, assigns, predecessors, representatives, parents and shareholders, subsidiaries, affiliates, and divisions, with respect to any claims arising from or out of the Revolver or the Term Loans that were or could have been asserted in the Bankruptcy Case, the Remand Litigation, or any related case or proceeding (provided that the foregoing shall not release or affect any claim or obligation arising under the terms of this Agreement).

b. Subject to and conditioned on the occurrence of the 9019 Effective Date and payment in full by Dow Corning of the Settlement Payment to the Claimant Parties in accordance with Sections 2 and 3 of this Agreement, Dow Corning, for itself and its present and former officers, directors, employees, agents, assigns, predecessors, representatives, subsidiaries, affiliates, and divisions, forever and

8

irrevocably releases, acquits, discharges, and covenants not to sue or bring or maintain suit against any Claimant Party or Revolver Claimant, and each of their present and former officers, directors, employees, agents, assigns, predecessors, representatives, parents and shareholders, subsidiaries, affiliates, and divisions, with respect to any claims arising from or out of the Revolver or the Term Loans that were or could have been asserted in the Bankruptcy Case, the Remand Litigation, or any related case or proceeding (provided that the foregoing shall not release or affect any claim or obligation arising under the terms of this Agreement).

6. **Conditions.** The obligations of the Claimant Parties to perform under this Agreement are subject to satisfaction of each of the following conditions:

   a. On the first business day following the Execution Date, Dow Corning shall file a motion in the Bankruptcy Case pursuant to the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 9019, in all substantive respects in the form attached hereto as <u>Exhibit 1</u>, seeking entry of the Rule 9019 Order (the "<u>Rule 9019 Motion</u>");

   b. On the first business day following the Execution Date, Dow Corning shall cause the Rule 9019 Motion to be served on the Claimant Parties through their counsel listed in Section 8 of this Agreement, on the Revolver Claimants (through their counsel, as applicable), and on any other known beneficial and/or legal (or record) holders of any portion of the Revolver and each of the Term Loans and the Claims, and shall cause to be published on such date (or the soonest possible date(s) thereafter as shall be available from each of the following publications) in the National Edition of the Wall Street Journal, the New York Times, and the Midland Daily News notice of the Rule 9019 Motion, in all substantive respects in the form attached as an exhibit to the form of Rule 9019 Motion attached hereto as <u>Exhibit 1</u>, that shall describe the terms of this Agreement and set forth the deadline for objections to the Rule 9019 Motion;

   c. By no later than September 25, 2019 (or such later date as may be agreed by all Parties in writing), the District Court shall have entered an order in the Bankruptcy Case approving the Agreement pursuant to the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 9019, which order shall be substantially in the form attached hereto as <u>Exhibit 2</u> with such modifications as may be mutually acceptable to all Parties (the "<u>Rule 9019 Order</u>"); for the avoidance of doubt, if the District Court declines to approve the Rule 9019 Order in such form by such date (including if it declines to order in the Rule 9019 Order that, after Dow Corning makes the Settlement Payment in full in accordance with Sections 2 and 3 of this Agreement and subject to the distribution and allocation of the Settlement Payment as provided in Sections 4.d and 4.e of this Agreement, (a) all creditors or potential creditors, known or unknown, of Dow Corning shall be barred from asserting claims against the Claimant Parties in respect of the Revolver and the Term Loans and (b) each of Bank of America, JPMorgan, Citibank and CTC are released and exculpated in respect of the Revolver as

9

provided in the form of Rule 9019 Order attached hereto as <u>Exhibit 2</u>), the Claimant Parties shall have no obligation to perform their obligations under this Agreement and may terminate the Agreement in the manner provided in Section 7.c. of this Agreement;

d. By no later than October 30, 2019 (or such later date as may be agreed by all Parties in writing), the Rule 9019 Order shall have become a "<u>Final Order</u>", which shall mean that the time for appeal of the Rule 9019 Order shall have expired, and no appeal or other proceeding seeking re-argument, petition for certiorari, rehearing or other review or modification of the Rule 9019 Order shall have been filed or remain pending, or if an appeal or such other proceeding has been filed, such appeal or other proceeding shall have been resolved and no longer remain pending and the Rule 9019 Order shall remain in effect and shall not have been reversed, vacated, modified or stayed, and as to which the time to take any further appeal or to seek certiorari or further re-argument, review, modification or rehearing shall have expired; and

e. Dow Corning shall have timely paid the Settlement Payment in full to the Claimant Parties in accordance with Sections 2 and 3 hereof.

7. **<u>Termination and Breach.</u>** This Agreement and the obligations of the Parties may be terminated as follows:

a. By the mutual written agreement of all Parties hereto;

b. By Dow Corning, in the exercise of its sole discretion, if (i) the District Court does not enter the Rule 9019 Order by September 25, 2019 (or such later date as may be agreed by all Parties in writing), (ii) the District Court declines to order in the Rule 9019 Order that, after Dow Corning makes the Settlement Payment in full in accordance with Sections 2 and 3 of this Agreement, all creditors or potential creditors, known or unknown, of Dow Corning shall be barred from asserting claims against Dow Corning in respect of the Revolver and the Term Loans, or (iii) the Rule 9019 Order has not become a Final Order by October 30, 2019 (or such later date as may be agreed by all Parties in writing), by delivery of a written notice in accordance with Section 8 of this Agreement (which notice must be given by Dow Corning and actually received by the Claimant Parties no later than two (2) business days after:  in the case of clause (i) of this Section 7.b, September 25, 2019 (or such later date as may be agreed by all Parties in writing); in the case of clause (ii) of this Section 7.b, the date the District Court enters the Rule 9019 Order without the provision specified in such clause (ii); and in the case of clause (iii) of this Section 7.b, October 30, 2019 (or such later date as may be agreed by all Parties in writing)); provided, however, Dow Corning shall not be allowed to terminate this Agreement if the reason any of the conditions to Dow Corning's obligations set forth in clause (i), (ii) and (iii)  of this Section 7.b is not met is because of a breach of the Agreement by Dow Corning.

10

c. By the Claimant Parties, in the exercise of their sole discretion, if any of the conditions to the Claimant Parties' obligations set forth in Section 6 of this Agreement is not met by any deadline therefor, by delivery of a written notice in accordance with Section 8 of this Agreement (which notice must be given by the Claimant Parties and actually received by Dow Corning no later than two (2) business days after the deadline for the relevant unmet condition set forth in Section 6); provided, however, the Claimant Parties shall not be allowed to terminate this Agreement if the reason any of the conditions to their obligations is not met is because of a breach of the Agreement by the Claimant Parties.

If the Agreement is terminated in accordance with this Section 7, this Agreement shall be null and void, and each Party shall have all of the rights, claims, defenses, and obligations that such Party would have had in the absence of this Agreement (including all rights, claims, defenses and obligations arising in or relating to the proceedings in the Remand Litigation), which shall not be prejudiced or affected adversely in any way by reason of such Party's entry into this Agreement (and the Parties shall cooperate in rescheduling any open items and in seeking a prompt trial in the District Court of the Remand Litigation).

For the avoidance of doubt, in the event any Party breaches its obligations under this Agreement, the other Parties may, as an alternative to termination of the Agreement, sue that Party for specific performance and/or damages. In the event a Party is found by a court of competent jurisdiction to have breached this Agreement, it shall be liable to all other Parties for their reasonable fees and costs incurred in seeking to enforce, or to obtain damages arising out of the breach of, the Agreement.

8. **Notices.** All notices hereunder shall be deemed given if in writing and delivered, if sent by electronic mail, courier, or registered or certified mail (return receipt requested) to the following addresses (or at such other addresses as shall be specified by like notice):

a. If to Dow Corning, to:

Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
Attention: Nader R. Boulos, P.C.
Email addresses:     nboulos@kirkland.com

-with a copy to-

Dow Silicones Corporation
2030 Dow Center
Midland, MI 48674-0001
Attention: Jason C. Miller
Email address:       jmiller13@dow.com

b.  If to a Claimant Party, to:

Pepper Hamilton LLP
4000 Town Center
Suite 1800
Southfield, MI 48074-1505
Attention:  Robert S. Hertzberg and Deborah Kovsky-Apap
Email addresses:        hertzber@pepperlaw.com
                        kovskyd@pepperlaw.com

-and-

Wilmer Cutler Pickering Hale and Dorr LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Attention:  Philip D. Anker
Email address:        philip.anker@wilmerhale.com

-and

Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601
Attention: Daniel J. McGuire
Email address:        dmcguire@winston.com

9.  **Choice of Law.**  This Agreement shall be governed by the law of the State of New York without regard to its choice of law rules.

10. **Jurisdiction.**  Each Party agrees that it shall bring any action or proceeding in respect of any claim arising out of or related to this Agreement in the District Court and, solely in connection with claims arising under this Agreement:  (i) irrevocably submits to the jurisdiction of the District Court; (ii) waives any objection to laying venue in any such action or proceeding in the District Court; (iii) waives any objection that the District Court is an inconvenient forum or does not have jurisdiction over any Party hereto; (iv) waives, to the fullest extent permitted by applicable law, any right it may have to a trial by jury in any legal proceeding arising out of or relating to this Agreement or the transactions contemplated hereby.  Notwithstanding any other provision of this Agreement, the Agreement and the releases set forth herein may be submitted in any court, arbitration, or other legal proceeding to enforce the terms of such releases.

11. **Entire Agreement.**  This Agreement, including any exhibits, annexes and/or schedules hereto and the exhibits, annexes, and/or schedules thereto, constitutes the entire agreement between the Parties concerning the subject matter of this Agreement and supersedes all prior negotiations, agreements and understandings, whether written or oral, between and among the Parties concerning the subject matter of this Agreement.  Each of

12

the Parties hereto acknowledges that it is executing this Agreement without reliance on any representations, warranties or commitments other than those representations, warranties and commitments expressly set forth in this Agreement.

12. **Modification.** This Agreement and the obligations of the Parties may be modified by the mutual written agreement of all Parties thereto.

13. **Successors and Assigns.** Except as otherwise provided in this Agreement, this Agreement is intended to bind and inure to the benefit of each of the Parties and each of their respective successors, assigns, heirs, executors, administrators and representatives.

14. **Interpretation.** This Agreement is the product of negotiations among the Parties, and the enforcement or interpretation of this Agreement is to be interpreted in a neutral manner; and any presumption with regard to interpretation for or against any Party by reason of that Party (or its counsel) having drafted or caused to be drafted this Agreement or any portion of this Agreement, shall not be effective in regard to the interpretation of this Agreement.

15. **Settlement Discussions.** This Agreement and the transactions contemplated herein are part of a proposed settlement among the Parties. Nothing herein shall be deemed an admission of any kind. To the extent provided by Federal Rule of Evidence 408, all applicable mediation privileges, and any applicable state rules of evidence, this Agreement and all negotiations relating thereto shall not be admissible into evidence in any proceeding other than a proceeding to enforce the terms of this Agreement.

16. **Titles and Headings.** Titles and headings in this Agreement are inserted for convenience of reference only and are not intended to affect the interpretation or construction of the Agreement.

17. **Execution of the Agreement.** This Agreement may be executed in counterparts, and by the different Parties hereto on separate counterparts, each of which when executed and delivered shall constitute an original. Delivery of an executed counterpart by facsimile or electronic mail shall be equally as effective as delivery of an original executed counterpart.

[ Signature Page Follows ]

13

IN WITNESS WHEREOF, the Parties hereto have executed this Settlement Agreement as of the Execution Date set forth above.

DOW SILICONES CORPORATION (formerly known as Dow Corning Corporation)

By: _____ JCM
Name:
Title:

BANK OF AMERICA, N.A. (successor to Bank of America National Trust and Savings Association), solely in its capacity as Administrative Agent under the Revolver

By: _____
Name:
Title:

JPMORGAN CHASE BANK, N.A.

By: _____
Name:
Title:

MIDTOWN ACQUISITIONS, L.P. (f/k/a DK Acquisition Partners, L.P.)

By: _____
Name:
Title:

FRANKLIN MUTUAL ADVISERS, LLC

By: _____
Name:
Title:

BARDIN HILL INVESTMENT PARTNERS LP (formerly known as Halcyon Asset Management LLC)

By: _____
Name:
Title:

14

IN WITNESS WHEREOF, the Parties hereto have executed this Settlement Agreement as of the Execution Date set forth above.

DOW SILICONES CORPORATION (formerly known as Dow Corning Corporation)

By: _____
     Name:
     Title:

BANK OF AMERICA, N.A. (successor to Bank of America National Trust and Savings Association), solely in its capacity as Administrative Agent under the Revolver

By: _____
Name: Liliana Claar
Title: Vice President

JPMORGAN CHASE BANK, N.A.

By: _____
     Name:
     Title:

MIDTOWN ACQUISITIONS, L.P. (f/k/a DK Acquisition Partners, L.P.)

By: _____
     Name:
     Title:

FRANKLIN MUTUAL ADVISERS, LLC

By: _____
     Name:
     Title:

BARDIN HILL INVESTMENT PARTNERS LP (formerly known as Halcyon Asset Management LLC)

By: _____
     Name:
     Title:

14

IN WITNESS WHEREOF, the Parties hereto have executed this Settlement Agreement as of the Execution Date set forth above.

DOW SILICONES CORPORATION (formerly known as Dow Corning Corporation)

By: _____
Name:
Title:

BANK OF AMERICA, N.A. (successor to Bank of America National Trust and Savings Association), solely in its capacity as Administrative Agent under the Revolver

By: _____
Name:
Title:

JPMORGAN CHASE BANK, N.A.

By: _____
Name:
Title:      Brian M. Ercolani, Asc
            Attorney-in-Fact

MIDTOWN ACQUISITIONS, L.P. (f/k/a DK Acquisition Partners, L.P.)

By: _____
Name:
Title:

FRANKLIN MUTUAL ADVISERS, LLC

By: _____
Name:
Title:

BARDIN HILL INVESTMENT PARTNERS LP (formerly known as Halcyon Asset Management LLC)

By: _____
Name:
Title:

14

IN WITNESS WHEREOF, the Parties hereto have executed this Settlement Agreement as of the Execution Date set forth above.

DOW SILICONES CORPORATION (formerly known as Dow Corning Corporation)

By: _____

Name:
Title:

BANK OF AMERICA, N.A. (successor to Bank of America National Trust and Savings Association), solely in its capacity as Administrative Agent under the Revolver

By: _____

Name:
Title:

JPMORGAN CHASE BANK, N.A.

By: _____

Name:
Title:

MIDTOWN ACQUISITIONS, L.P. (f/k/a DK Acquisition Partners, L.P.)

By: Midtown Acquisitions GP LLC, its manager

By: _____

Name: Conor Bastable
Title: Manager

FRANKLIN MUTUAL ADVISERS, LLC

By: _____

Name:
Title:

BARDIN HILL INVESTMENT PARTNERS LP (formerly known as Halcyon Asset Management LLC)

By: _____

Name:
Title:

14

IN WITNESS WHEREOF, the Parties hereto have executed this Settlement Agreement as of the Execution Date set forth above.

DOW SILICONES CORPORATION (formerly known as Dow Corning Corporation)

By: _____

Name:
Title:

BANK OF AMERICA, N.A. (successor to Bank of America National Trust and Savings Association), solely in its capacity as Administrative Agent under the Revolver

By: _____

Name:
Title:

JPMORGAN CHASE BANK, N.A.

By: _____

Name:
Title:

MIDTOWN ACQUISITIONS, L.P. (f/k/a DK Acquisition Partners, L.P.)

By: _____

Name:
Title:

FRANKLIN MUTUAL ADVISERS, LLC

By: _____

Name:
Title:

BARDIN HILL INVESTMENT PARTNERS LP (formerly known as Halcyon Asset Management LLC)

By: _____

Name:
Title:

14

IN WITNESS WHEREOF, the Parties hereto have executed this Settlement Agreement as of the Execution Date set forth above.

DOW SILICONES CORPORATION (formerly known as Dow Corning Corporation)

By: _____
      Name:
      Title:

BANK OF AMERICA, N.A. (successor to Bank of America National Trust and Savings Association), solely in its capacity as Administrative Agent under the Revolver

By: _____
      Name:
      Title:

JPMORGAN CHASE BANK, N.A.

By: _____
      Name:
      Title:

MIDTOWN ACQUISITIONS, L.P. (f/k/a DK Acquisition Partners, L.P.)

By: _____
      Name:
      Title:

FRANKLIN MUTUAL ADVISERS, LLC

By: _____
      Name:
      Title:

BARDIN HILL INVESTMENT PARTNERS LP (formerly known as Halcyon Asset Management LLC), on behalf of accounts it manages

By: _____John Freese_____
      Name:   John Freese
      Title:   Authorized Signatory    Suzanne McDermott
                                             Authorized Signatory

14

**SCHEDULE A**

| Non-Agent Claimant | Principal Amount Of Term Loans In Which Legal (or Record) Title And/Or Beneficial Interests Are Held |
|---|---|
| JPMorgan | $31,142,044.60 |
| Midtown Acquisitions | $34,698,480.00 |
| Franklin Mutual | $4,641,595.15 |
| Bardin Hill | $2,725,856.00 |
| **Total Term Loan Principal Claim** | **$73,207,975.75** |

**SCHEDULE B**

**Revolver Claimants And Amounts Of Revolver Principal Claim Held**

| Revolver Claimant | Amount of Revolver Principal Claim | Percentage of Revolver Principal Claim |
|---|---|---|
| Citibank, N.A. | $66,097,500.00 | 17.626000000% |
| Deutsche Bank Trust Co. Americas | $35,727,500.00 | 9.527333333% |
| Custodial Trust Company n/k/a JPMorgan Chase Bank, N.A. | $42,563,000.30 | 11.350133413% |
| JPMorgan Chase Bank, N.A. | $190,799,499.70 | 50.879866587% |
| Mizuho Corporate Bank Ltd. | $26,250,000.00 | 7.000000000% |
| Royal Bank of Scotland PLC | $13,562,500.00 | 3.616666667% |
| **Total Revolver Principal Claim** | **$375,000,000.00** | **100.000000000%** |

**Exhibit B** to **Exhibit 1**

**Swap Settlement Agreement**

# SETTLEMENT AGREEMENT WITH CLAIMANTS HOLDING CREDIT SUISSE, BANK OF AMERICA AND CITIBANK SWAP CLAIMS

This Settlement Agreement with CLAIMANTS holding Credit Suisse, Bank of America and Citibank Swap Claims ("Agreement") is made on this the 19th day of August, 2019 (the "Execution Date") by and between (i) Dow Silicones Corporation ("DSC") f/k/a Dow Corning Corporation ("Dow Corning"), the reorganized debtor, (ii) Credit Suisse First Boston Management Corporation ("CSFB"), (iii) Farallon Entities: Tinicum Partners, LP, Plastic Holdings, LLC, Farallon Capital Partners, LP, Farallon Capital Institutional Partners, LP and Farallon Capital Institutional Partners II, LP ("Farallon CSFB Entities"), (iv) Farallon Entities: Tinicum Partners, LP, Plastic Holdings, LLC, Farallon Capital Partners, LP, Farallon Capital Institutional Partners, LP, Farallon Capital Institutional Partners II, LP and Farallon Capital Institutional Partners III, LP ("Farallon BofA Entities"), and (v) Citibank, N.A. ("Citibank"). CSFB, Farallon CSFB Entities, Farallon BofA Entities and Citibank are jointly referred to herein as "CLAIMANTS."

1. Dow Corning was the debtor in the United States Bankruptcy Court, Eastern District of Michigan, Northern Division (the "Bankruptcy Court") in Chapter 11 Case No. 95-20512 (the "Dow Corning Case"). The Amended Joint Plan of Reorganization, as amended (the "Plan"), in the Dow Corning Case became effective on June 1, 2004. CLAIMANTS are the holders of Class 4[1] Claims in the Dow Corning Case. Reference to the Plan is made for all purposes.

2. Dow Corning and Credit Suisse Financial Products ("CSFP") were parties to an Interest Rate and Currency Exchange Agreement dated March 22, 1991, and an amendment thereto dated May 12, 1995 (the "CSFP Swap Agreement"). Shortly after the commencement of the Dow Corning Case, the CSFP Swap Agreement was terminated. CSFP filed Claim number 0379427-00 in the Dow Corning Case for its claims arising under the CSFP Swap Agreement and under certain forward contract transactions, and such claims are referred to herein as the "CSFP Claim." After filing of the CSFP Claim, the CSFP Claim was transferred by CSFP to CSFB, and a part of the CSFP Claim was thereafter transferred by CSFB to the Farallon CSFB Entities.

3. Dow Corning filed Objection 93 to the CSFP Claim ("Objection 93") for any interest or other fees, costs and expenses relating to the CSFP Claim other than the amount of Case Interest as defined by the Plan. CSFB and/or prior owner(s) of the CSFP Claim and Farallon CSFB Entities filed a Response to Objection 93 ("Response 93"), asserting entitlement to the excess interest and to fees, costs and expenses to which Dow Corning objected in Objection 93. In addition to Response 93 filed by CSFB and Farallon CSFB Entities, Franklin Mutual Advisers, LLC on its own behalf and on behalf of its managed entities (collectively, "Franklin") and Angelo, Gordon & Co., LP on its own behalf and on behalf of its managed entities (collectively, "Angelo") each filed a response to several objections to claims, including Objection 93. In a letter dated November 19, 2007 from Franklin's counsel, Robert S. Hertzberg ("Hertzberg") of the law firm Pepper Hamilton

---

[1] Capitalized terms not otherwise defined herein are defined in the Plan.

LLP, to Dow Corning's counsel, Franklin's counsel stated that Franklin owned a 36.243% interest in the CSFP Claim. In another letter dated November 19, 2007 from Hertzberg, as counsel for Bear Stearns Investment Products, Inc., together with investment funds and partnerships managed directly or indirectly by Bear Stearns Investment Products, Inc. (collectively, "Bear Stearns"), to Dow Corning's counsel, Bear Stearns' counsel stated that Bear Stearns owned a 3.935% interest in the CSFP Claim. Franklin has not filed a notice pursuant to Bankruptcy Rule 3001(e) in the Dow Corning Case reflecting a transfer of an interest in the CSFP Claim to Franklin. Bear Stearns filed a notice pursuant to Bankruptcy Rule 3001(e) reflecting a transfer of an interest in the CSFP Claim to Chase Lincoln First Commercial Corporation ("Chase Lincoln"). Objection 93 to the CSFP Claim has not been resolved.

4.  Dow Corning and Bank of America Illinois, formerly Continental Bank N.A., ("BAI") were parties to an Interest Rate and Currency Exchange Agreement dated April 17, 1990, and an amendment thereto dated May 2, 1995 (the "BofA Swap Agreement"). BAI assigned the BofA Swap Agreement to Bank of America National Trust and Savings Association ("BofA"), and BofA assumed the BofA Swap Agreement. Shortly after the commencement of the Dow Corning Case, the BofA Swap Agreement was terminated. BofA filed Claim number 0282425-00 in the Dow Corning Case for its claims arising under the BofA Swap Agreement, and such claims are referred to herein as the "BofA Claim." After filing of the BofA Claim, the BofA Claim was transferred by BofA to the Farallon BofA Entities.

5.  Dow Corning filed Objection 94 to the BofA Claim ("Objection 94") for any interest or other fees, costs and expenses relating to the BofA Claim other than the amount of Case Interest as defined by the Plan. The Farallon BofA Entities filed a Response to Objection 94, asserting entitlement to the excess interest and to fees, costs and expenses to which Dow Corning objected in Objection 94. Objection 94 to the BofA Claim has not been resolved.

6.  Dow Corning and Citibank were parties to an Interest Rate and Currency Exchange Agreement dated January 19, 1988 (the "Citibank Swap Agreement"). Dow Corning and Citibank, through its Tokyo Branch, were parties to an Interest Rate and Currency Exchange Agreement dated August 2, 1988 (the "Citibank Tokyo Swap Agreement") (the Citibank Swap Agreement and the Citibank Tokyo Swap Agreement are together referred to as the "Citibank Swap Agreements"). Shortly after the commencement of the Dow Corning Case, the Citibank Swap Agreements were terminated. Citibank filed Claim number 0297209-00 in the Dow Corning Case for its claims arising under the Citibank Swap Agreements and under certain forward contract transactions, and such claims are referred to herein as the "Citibank Claim."

7.  Dow Corning filed Objection 92 to the Citibank Claim ("Objection 92") for any interest or other fees, costs and expenses relating to the Citibank Claim other than the amount of Case Interest as defined by the Plan. Citibank and/or prior owner(s) of the Citibank Claim filed a Response to Objection 92 ("Response 92"), asserting entitlement to the excess interest and to fees, costs and expenses to which Dow Corning objected in Objection 92. In addition to Response 92 filed by Citibank, Franklin and Angelo each filed a response

2

to several objections to claims, including Objection 92. In a letter dated November 19, 2007 from Franklin's counsel, Hertzberg, to Dow Corning's counsel, Franklin's counsel stated that Franklin owned a 55.84% interest in the Citibank Claim. No notice pursuant to Bankruptcy Rule 3001 has been filed in the Dow Corning Case reflecting a transfer of any interest in the Citibank Claim to Franklin or Angelo. Objection 92 to the Citibank Claim has not been resolved.

8. Franklin and Chase Lincoln join in the execution of this Agreement to evidence their consent to and agreement with this Agreement.

9. On June 1, 2004, the Plan became effective. On or about June 16, 2004 and June 30, 2004, Dow Corning made Plan distributions to the owners and holders of the CSFP Claim, the BofA Claim and the Citibank Claim (the "CLAIMS") in payment of the undisputed amounts owing on such claims.

10. The disputed amounts owing on the CLAIMS have been the subject of litigation in the Bankruptcy Court as set out in Objection 92, Objection 93 and Objection 94 (the "Objections"), and in the foregoing described responses to the Objections, and in other pleadings and in the United States Court of Appeals for the Sixth Circuit under case nos. 04-1608/1643/1720/1721/1722 and, upon remand by the Sixth Circuit, are now pending before United States District Judge Denise Page Hood in the Dow Corning Case under Objection Docket No. 97-0009.

11. DSC and CLAIMANTS have now resolved all disputes relating to any amount remaining unpaid on the CLAIMS, including any and all principal, interest, fees, costs and expenses of any nature or character, heretofore incurred or hereafter to be incurred; and such total amount remaining unpaid for all of the CLAIMS is $1,500,000.00 (such amount referred to herein as the "Resolved Amount"). There is no claim, amount, or other indebtedness owing or unpaid based on the CLAIMS that is not included in the Resolved Amount.

12. CLAIMANTS have advised DSC and represent and warrant, severally and not jointly, to DSC that, as of the Execution Date of this Agreement and hereafter, until the Plan distribution in the Resolved Amount is made to CLAIMANTS, the owners and holders of the CLAIMS are and shall remain CLAIMANTS and that CLAIMANTS are the only persons (including herein, any legal entity) entitled to any Plan distribution on the CLAIMS, including the Resolved Amount.

13. Angelo is aware of this Agreement and does not object to this Agreement. Angelo affirms it will not seek any relief or payment based on the CLAIMS or its aforementioned responses filed in the Dow Corning Case.

14. CLAIMANTS, for each of the CLAIMANTS and for each and every owner and holder of any obligations owing based on the CLAIMS, have individually requested and instructed DSC to make the Plan distribution in the Resolved Amount totaling $1,500,000.00 to CLAIMANTS, to be paid to each in the following amounts:

   a. Credit Suisse Securities (USA) LLC f/b/o Credit Suisse First Boston Management Corporation $795,796.63,

3

b.      Tinicum Partners, LP $14,114.17,

c.      Farallon Capital Partners, LP $101,229.86,

d.      Farallon Capital Institutional Partners, LP $198,997.19,

e.      Farallon Capital Institutional Partners II, LP $82,904.27,

f.      Farallon Capital Institutional Partners III, LP $17,374.79,

g.      Farallon Capital Management LLC f/b/o Plastic Holdings LLC $82,823.24, and

h.      Citibank, N.A. $206,759.85.

Upon tender or payment by DSC of the Resolved Amount to each of the CLAIMANTS in the above amounts, CLAIMANTS, Franklin and Chase Lincoln, severally and not jointly, release DSC from any claim or liability of any type arising from or related to the CLAIMS, or the making of the Plan distribution in the Resolved Amount on the CLAIMS to CLAIMANTS, including, without limitation, principal, interest, fees, costs and expenses of any nature and character, heretofore incurred or hereafter to be incurred, by any person based on the CLAIMS (the "Released Claims"). In the event any person makes a claim against DSC based on the CLAIMS, the Released Claims or the Resolved Amount, each of the CLAIMANTS and their successors and assigns, severally and not jointly, for themselves, and for each and every owner and holder of any obligations owing on the CLAIMS, will at all times indemnify and save harmless DSC from and against any and all claims, actions, suits, liabilities, losses, damages, interest, costs, charges, fees (including reasonable attorneys' fees), and other expenses of every nature and character, whether groundless or otherwise, by reason of the CLAIMS or the making of the Plan distribution in the Resolved Amount, or as to any interest in the CLAIMS for which a CLAIMANT received a Plan distribution in June 2004; provided however, that DSC shall not be indemnified for claims or causes of action for actual fraud by DSC. For avoidance of doubt, references to "DSC" in this Agreement are expressly intended to include Dow Corning Corporation, DSC's former corporate name.

15.     The undersigned officers, representatives and general partners of CLAIMANTS, Franklin and Chase Lincoln executing this Agreement on behalf of CLAIMANTS, Franklin and Chase Lincoln (collectively, the "Signatories") are authorized to execute this Agreement as of the Execution Date. The following is the name, title, business address, telephone number and e-mail address of each of the Signatories, indicating their consent to the settlement of the CLAIMS through the payment of the Resolved Amount:

        Credit Suisse First Boston Management Corporation
        Attention: Paul Gilmore
        Director, General Counsel Division
        Credit Suisse Securities (USA) LLC
        11 Madison Avenue, 4th Floor New York, NY 10010
        (919) 994-1015
        paul.gilmore@credit-suisse.com

4

Farallon Partners, LLC, General Partner of each of the partnerships included in
the Farallon CSFB Entities and Farallon BofA Entities
Attention: Michael G. Linn
Managing Member
One Maritime Plaza, Suite 2100
San Francisco, CA 94111
(415) 421-2132
mlinn@faralloncapital.com


Farallon Capital Management LLC, manager of Plastic Holdings, LLC
Attention: Michael G. Linn
Managing Member
One Maritime Plaza, Suite 2100
San Francisco, CA 94111
(415) 421-2132
mlinn@faralloncapital.com


Citibank, N.A.
Attention: Robert N. Hay
Authorized Signatory
388 Greenwich Street, 17th Floor
New York, NY 10013
(212) 816-1172
robert.n.hay@citi.com


Franklin Mutual Advisers LLC
Attention: Peter Langerman
Chairman/CEO-Mutual Series
101 John F. Kennedy Pkwy
Short Hills, NJ 07078
(973) 912-2048
Peter.langerman@franklintempleton.com

Chase Lincoln First Commercial Corporation
Attention: Brian M. Ercolani
Authorized Signatory
500 Stanton Christiana Road
NCC5, Floor 01
Newark, DE 19713-2107
(302) 634-1486
Brian.m.ercolani@jpmorgan.com

16. The United States Taxpayer Identification Number ("TIN") of each of the CLAIMANTS is as follows:

   a. Credit Suisse Securities (USA) LLC (f/b/o Credit Suisse First Boston Management Corporation) TIN: <u>13-1898818</u>,

   b. Tinicum Partners, LP TIN: <u>13-3246167</u>,

   c. Farallon Capital Partners, LP TIN: <u>94-3106322</u>,

   d. Farallon Capital Institutional Partners, LP TIN: <u>94-3106323</u>,

   e. Farallon Capital Institutional Partners II, LP TIN: <u>94-3106692</u>,

   f. Farallon Capital Institutional Partners III, LP TIN: <u>94-3253905</u>,

   g. Farallon Capital Management LLC (f/b/o Plastic Holdings LLC) TIN: <u>54-2152756</u>, and

   h. Citibank, N.A. TIN: <u>13-5266470</u>.

17. Each of the CLAIMANTS shall complete, execute and deliver to DSC wire instructions for transmittal of the Resolved Amount to each of such CLAIMANTS between two and five business days before DSC makes the Plan distribution of the Resolved Amount pursuant to this Agreement.

18. Jurisdiction and venue for the enforcement of this Agreement shall be in the Bankruptcy Court. This Agreement shall be construed and governed by the laws of the State of Michigan.

19. This Agreement shall become effective when (i) an Order approving the Resolved Amount as full and final satisfaction of all amounts owing on the CLAIMS becomes final and non-appealable and (ii) the Resolved Amount is tendered by DSC to CLAIMANTS payable and delivered to CLAIMANTS as provided herein. The Resolved Amount shall be distributed by DSC within two (2) business days of such Order becoming final and non-appealable. The distribution of the Resolved Amount by DSC as provided herein shall represent full and final satisfaction and discharge of the Released Claims in accordance with the Plan; and Objections 92, 93 and 94 and all responses thereto shall have been fully and finally resolved.

20. This Agreement and related documents and pleadings may be signed by the parties in counterparts, and signatures by facsimile or PDF, transmitted electronically, shall be deemed originals.

IN WITNESS WHEREOF, the parties hereto have executed this Settlement Agreement as of the Execution Date set forth above.

Credit Suisse First Boston Management Corporation

By: _Pl a. C_____

    Paul Gilmore
    Director, General Counsel Division
    Credit Suisse Securities (USA) LLC
    August 12, 2019

Farallon Entities:

    Tinicum Partners, LP, a New York limited partnership,
    Farallon Capital Partners, LP, a California limited partnership,
    Farallon Capital Institutional Partners, LP, a California limited
        partnership, and
    Farallon Capital Institutional Partners, II, LP a California limited
        partnership.
    Farallon Capital Institutional Partners, III, LP a California limited
        partnership.

      By: Farallon Partners, LLC
         General Partner of each of the above Farallon Entities

      By:_____

        Michael G. Linn
        Managing Member
        August __, 2019

Plastic Holdings, LLC, a Delaware limited liability company

      By: Farallon Capital Management, LLC
        Manager of Plastic Holdings, LLC

      By: _____

        Michael G. Linn
        Managing Member
        August __, 2019

7

IN WITNESS WHEREOF, the parties hereto have executed this Settlement Agreement as of the Execution Date set forth above.

Credit Suisse First Boston Management Corporation

By:_____

        Paul Gilmore
        Director, General Counsel Division
        Credit Suisse Securities (USA) LLC
        August __, 2019

Farallon Entities:

        Tinicum Partners, LP, a New York limited partnership,
        Farallon Capital Partners, LP, a California limited partnership,
        Farallon Capital Institutional Partners, LP, a California limited
            partnership, and
        Farallon Capital Institutional Partners, II, LP a California limited
            partnership.
        Farallon Capital Institutional Partners, III, LP a California limited
            partnership.

        By: Farallon Partners, LLC
            General Partner of each of the above Farallon Entities

By:_____

      ~~Michael G. Linn~~
      Managing Member      **Michael B. Fisch**
      August 12, 2019      **Managing Member**

Plastic Holdings, LLC, a Delaware limited liability company

        By: Farallon Capital Management, LLC
            Manager of Plastic Holdings, LLC

By:_____

      ~~Michael G. Linn~~
      Managing Member      **Michael B. Fisch**
      August 12, 2019      **Managing Member**

7

Citibank, N.A.

By: _Robert N. Hay Jr_____

Robert N. Hay
Authorized Signatory
August *13*, 2019

Dow Silicones Corporation

By:_____

Jason C. Miller
Senior Counsel
The Dow Chemical Company
August __, 2019

**AGREED:**

Franklin Mutual Advisers, LLC

By:_____

Peter Langerman
Chairman/CEO-Mutual Series
August __, 2019

Chase Lincoln First Commercial Corporation

By:_____

Brian M. Ercolani
Authorized Signatory
August __, 2019

8

Citibank, N.A.

By:_____
     Robert N. Hay
     Authorized Signatory
     August __, 2019

Dow Silicones Corporation

By:_____   JCM
     ~~Jason C. Miller~~ Michael Glackin
     ~~Senior Counsel~~ Associate General Counsel
     The Dow Chemical Company
     August __, 2019

**AGREED:**

Franklin Mutual Advisers, LLC

By:_____
     Peter Langerman
     Chairman/CEO-Mutual Series
     August __, 2019

Chase Lincoln First Commercial Corporation

By:_____
     Brian M. Ercolani
     Authorized Signatory
     August __, 2019

**8**

Citibank, N.A.

By:_____

Robert N. Hay
Authorized Signatory
August ___, 2019

Dow Silicones Corporation

By:_____

Jason C. Miller
Senior Counsel
The Dow Chemical Company
August ___, 2019

**AGREED:**

Franklin Mutual Advisers, LLC

By:_____

Peter Langerman
Chairman/CEO-Mutual Series
August 12, 2019

Chase Lincoln First Commercial Corporation

By:_____

Brian M. Ercolani
Authorized Signatory
August ___, 2019

8

Citibank, N.A.

By:_____

        Robert N. Hay
        Authorized Signatory
        August __, 2019

Dow Silicones Corporation

By:_____

        Jason C. Miller
        Senior Counsel
        The Dow Chemical Company
        August __, 2019

**AGREED:**

Franklin Mutual Advisers, LLC

By:_____

        Peter Langerman
        Chairman/CEO-Mutual Series
        August __, 2019

Chase Lincoln First Commercial Corporation

By:_____

        Brian M. Ercolani
        Authorized Signatory
        August 12, 2019

8

**EXHIBIT 2**

**Notice of Motion and Opportunity to Object**

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | Bankr. Obj. No. 97-0009 |
| DOW SILICONES CORPORATION | ) | |
| (formerly known as Dow Corning | ) | Bankr. Case No. 95-20512 |
| Corporation), | ) | |
| | ) | Honorable Denise Page Hood |
| Reorganized Debtor | ) | |

## NOTICE OF MOTION AND OPPORTUNITY TO OBJECT

On August 21, 2019, Dow Silicones Corporation filed the "Reorganized Debtor's Motion for Entry of an Order (I) Approving a Settlement Agreement With Class 4 Claimants Holding Pendency Interest Claims Pursuant to Federal Rule of Bankruptcy Procedure 9019(a), (II) Approving a Settlement Agreement With Class 4 Claimants Holding Swap Claims Pursuant to Federal Rule of Bankruptcy Procedure 9019(a), and (III) Granting Related Relief" (the "Motion").

**Your rights may be affected. You should read the Motion and its exhibits carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.)**

If you do not want the court to grant the relief sought in the Motion, or if you want the court to consider your views on the Motion, then on or before **September 12, 2019**, you or your attorney must file with the court an objection to the Motion via the court's Electronic Case Filing (ECF) system or at:

United States Bankruptcy Court
Eastern District of Michigan
111 First Street
Bay City, MI 48708

If you mail your objection to the court for filing, you must mail it early enough so the court will **receive** it on or before the date stated above.

You must also send a copy of your objection to:

Nader R. Boulos
Kirkland & Ellis LLP
300 North LaSalle
Chicago, IL 60654
Email address:
nboulos@kirkland.com

Philip D. Anker
Wilmer Cutler Pickering Hale and Dorr LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Email address:
philip.anker@wilmerhale.com

Robert S. Hertzberg
Deborah Kovsky-Apap
Pepper Hamilton LLP
4000 Town Center
Suite 1800
Southfield, MI 48074-1505
Email addresses:
hertzber@pepperlaw.com
kovskyd@pepperlaw.com

Andrew J. Markquart
Jacqueline P. Rubin
Paul, Weiss, Rifkind, Wharton &
Garrison LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Email addresses:
amarkquart@paulweiss.com
jrubin@paulweiss.com

Daniel J. McGuire
Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601
Email address:
dmcguire@winston.com

Leslie K. Berg
United States Department of Justice
Office of the U.S. Trustee
211 W. Fort St., Suite 700
Detroit, MI 48226
Email address:
Leslie.K.Berg@usdoj.gov

Linda Giannattasio
Robert N. Hay
Office of the General Counsel
Citigroup Global Markets Inc.
388 Greenwich Street, 17th Fl.
New York, NY 10013
Email addresses:
Linda.giannattasio@citi.com
robert.n.hay@citi.com

If you or your attorney do not take these steps, the court may decide that you do not oppose the relief sought in the Motion and may enter an order granting that relief without further notice.

Dated: August 21, 2019

Respectfully submitted,

/s/ *Nader R. Boulos*
Nader R. Boulos, P.C.
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2061

*Attorney for Dow Silicones Corporation*

2

**EXHIBIT 3**

**Publication Notice**

**IN THE UNITED STATES BANKRUPTCY COURT FOR THE EASTERN DISTRICT OF MICHIGAN**

| | | |
|---|---|---|
| In re DOW SILICONES CORPORATION | ) | Case No. 95-20512 |
| (formerly known as DOW CORNING | ) | Objection Docket 97-0009 |
| CORPORATION) | ) | Chapter 11 |

**NOTICE OF MOTION TO APPROVE COMPROMISE OF CLAIMS
RELATED TO CERTAIN BANK LOANS AND SWAP AGREEMENTS**

**TO: ALL HOLDERS OF CLAIMS AND OTHER INTERESTED PARTIES WHO ASSERT ANY RIGHT TO PAYMENT IN THE ABOVE-CAPTIONED BANKRUPTCY CASE WITH RESPECT TO THE CREDIT AGREEMENTS AND SWAP AGREEMENTS (AS DEFINED BELOW)**

**NOTICE IS HEREBY GIVEN THAT:**

1.     On May 15, 1995 (the "Petition Date"), Dow Corning Corporation ("Dow Corning"), now known as Dow Silicones Corporation, filed a petition for relief under chapter 11 of title 11 of the U.S. Code, commencing case no. 95-20512 (the "Bankruptcy Case") in the U.S. Bankruptcy Court for the Eastern District of Michigan (the "Court").

2.     Between November 30, 1999 and December 21, 1999, the Court entered orders confirming the Amended Joint Plan of Reorganization for Dow Corning (the "Plan"). The effective date of the Plan occurred on June 1, 2004 (the "Effective Date").

3.     Before the Petition Date, Dow Corning was a party to the following credit agreements (referred to collectively as the "Credit Agreements"):

     a.     a revolving credit agreement (the "Revolver") dated as of November 3, 1993 by and among Dow Corning Corporation, Bank of America National Trust and Savings Association as Administrative Agent, and the other financial institutions party thereto; and

     b.     five separate term loan agreements (collectively, the "Term Loans"), consisting of: (i) agreement dated as of November 16, 1992 by and between Dow Corning and Credit Lyonnais Chicago Branch; (ii) agreement dated as of July 12, 1993 by and between Dow Corning and The First National Bank of Chicago; (iii) agreement dated as of February 18, 1994 by and between Dow Corning and The Bank of New York; (iv) agreement dated as of February 24, 1994 by and between Dow Corning and Comerica Bank; and (v) agreement dated as of May 26, 1994 by and between Dow Corning and The Bank of Tokyo Trust Company.

4.     Before the Petition Date, Dow Corning was a party to four separate interest rate and currency exchange agreements (collectively, the "Swap Agreements"), consisting of:

     a.     agreement dated January 19, 1988, by and between Dow Corning and Citibank, N.A.;

     b.     agreement dated August 2, 1988, by and between Dow Corning and Citibank, N.A., through its Tokyo branch;

     c.     agreement dated April 17, 1990, and an amendment thereto dated May 2, 1995, by and between Dow Corning and Bank of America Illinois, formerly Continental Bank, N.A.; and

d.  agreement dated March 22, 1991, and an amendment thereto dated May 12, 1995, by and between Dow Corning and Credit Suisse Financial Products.

5.  After the Petition Date, various parties to the Credit Agreements and Swap Agreements and/or their successors, assigns and participants (collectively, the "Claimants") asserted claims in the Bankruptcy Case arising from the Credit Agreements and Swap Agreements, seeking, among other things, (a) interest accruing between the Petition Date and the Effective Date in excess of the amount provided under the Plan (the "Excess Interest"), and (b) certain fees, costs and expenses (the "Fees"). Dow Corning filed objections (the "Objections") to the claims for Excess Interest and Fees (the "Disputed Claims"), and litigation concerning the Disputed Claims is currently pending in the Bankruptcy Case.

6.  Dow Corning and the Claimants have reached agreements to settle all disputes related to the Disputed Claims. The terms of the settlements are incorporated into two separate agreements (the "Settlement Agreements").

7.  The Settlement Agreement in respect of the Credit Agreements (the "Loan Settlement") provides for Dow Corning to pay a settlement amount of $172 million (the "Loan Settlement Amount"), which will first be used to reimburse the fees and expenses that the Claimant Parties (as defined in the Loan Settlement) incurred under the Credit Agreements or in the litigation over the Disputed Claims for Excess Interest, with the balance allocated between the Revolver and the Term Loans such that the recovery on the Revolver will be five bond points (i.e., five percentage points) higher than on the Term Loans. The portion allocated to the Revolver will be paid to Bank of America as Agent under the Revolver for distribution on a pro rata basis to the Revolver Claimants, and the portion allocated to the Term Loans will be paid only to the Non-Agent Claimants (as such capitalized terms, if not defined herein, are defined in the Loan Settlement) that are party to the Loan Settlement. The foregoing is a summary only and qualified in its entirety by the Loan Settlement, a copy of which may be obtained as provided in paragraph 10 below and which should be consulted for a full recitation of its terms and conditions.

8.  The Settlement Agreement in respect of the Swap Agreements (the "Swap Settlement") provides for Dow Corning to pay a settlement amount of $1.5 million (the "Swap Settlement Amount") to the Swap Claimants (as such term is defined in the Motion defined in paragraph 9 below) as specified and allocated among the Swap Claimants in the Swap Settlement. The foregoing is a summary only and qualified in its entirety by the Swap Settlement, a copy of which may be obtained as provided in paragraph 10 below and which should be consulted for a full recitation of its terms and conditions.

9.  **On August 21, 2019, Dow Corning filed a motion in the Bankruptcy Case pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "Motion"). The Motion asks the Court to enter an order (the "Order") to, among other things,** (a) approve the Settlement Agreements as fair and reasonable compromises of all claims and disputes arising from or related to the Credit Agreements and Swap Agreements, including, without limitation, the Disputed Claims; (b) *subject to and conditioned on payment in full of the Loan Settlement Amount, bar and prohibit all creditors or potential creditors (whether known or unknown) of Dow Corning thereafter from challenging the Loan Settlement and from asserting any claims against Dow Corning in respect of the Credit Agreements, (c) subject to and conditioned on payment in full of the Loan Settlement Amount and the distribution and allocation of the Loan Settlement Amount as provided in Sections 4.d and 4.e of the Loan Settlement, bar and prohibit all creditors or potential creditors (whether known or unknown) of Dow Corning thereafter from asserting any claims against the Claimants in respect of the Credit Agreements (and from*

*asserting any claims against Bank of America as Administrative Agent under the Revolver, the Non-Agent Claimants, and JPMorgan Chase Bank, N.A. ("JPMorgan"), Citibank, N.A. ("Citibank") and Custodial Trust Company n/k/a JPMorgan Chase Bank, N.A. ("CTC") in respect of the entry into the Loan Settlement or any act taken in conformity with the Loan Settlement and the Order, including any act taken (or not taken) by Bank of America in compliance with any direction letter(s) provided by JPMorgan, Citibank and CTC and any act taken (or not taken) by JPMorgan, Citibank and CTC in providing any such direction letter(s),* and (d) *subject to and conditioned on payment in full of the Swap Settlement Amount and the occurrence of the Swap Effective Date, bar and prohibit all creditors or potential creditors (whether known or unknown) of Dow Corning thereafter from challenging the Swap Settlement and from asserting any claims in respect of the Swap Claims against Dow Corning, the Swap Claimants or any holders of beneficial interests in the Swap Claims*.

10.   If you wish to review the Motion, the Settlement Agreements and the proposed Order, you may obtain copies (a) by sending an email to DCC9019@kirkland.com, or (b) via PACER at https://ecf.mieb.uscourts.gov/.

11.   **The deadline for filing an objection to the Motion is September 12, 2019, at 5:00 p.m. Eastern Time (the "Objection Deadline").** Any objection to the Motion must (a) be in writing, (b) state with particularity the nature and grounds for the objection, and (c) be filed with the United States Bankruptcy Court for the Eastern District of Michigan in the Bankruptcy Case and served on the following parties no later than the Objection Deadline:  (i) Counsel to Dow Corning:  Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, IL 60654, Attn:  Nader R. Boulos, P.C. (email:  nboulos@kirkland.com); (ii) Counsel to the Claimants:  Pepper Hamilton LLP, 4000 Town Center, Suite 1800, Southfield, MI 48075-1505, Attn: Robert S. Hertzberg (email: hertzber@pepperlaw.com); Wilmer Cutler Pickering Hale and Dorr LLP, 7 World Trade Center, 250 Greenwich Street, New York, NY 10007, Attn:  Philip D. Anker (email: philip.anker@wilmerhale.com); Winston & Strawn LLP, 35 W. Wacker Drive, Chicago, IL 60601, Attn: Daniel J. McGuire (email:  dmcguire@winston.com); Linda Giannattasio, Office of the General Counsel, Citigroup Global Markets Inc., 388 Greenwich Street, 17th Floor, New York, NY 10013 (email: linda.giannattasio@citi.com); and Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, NY 10019-6064, Attn:  Andrew J. Markquart (e-mail: amarkquart@paulweiss.com); and (iii) Office of The United States Trustee, 211 West Fort Street, Suite 700, Detroit, MI 48226, Attn: Leslie K. Berg (email:  leslie.k.berg@usdoj.gov).

12.   **If no objection is timely filed by the Objection Deadline, the Court may grant the Motion and enter the Order without any further notice or hearing.  If a timely objection is filed, the Court will schedule a hearing to consider approval of the Motion and any objections to the Motion, the Settlement Agreements or the Order, with notice to Dow Corning, the Claimants, the U.S. Trustee, and any party filing a timely objection or other response, unless the Court determines that a hearing is unnecessary to resolve the Motion.**  Any such hearing will be held before the Honorable Denise Page Hood, United States District Judge, in the United States District Court for the Eastern District of Michigan, located at 231 W. Lafayette Blvd., Room 709, Detroit, Michigan 48226.  The hearing may be adjourned from time to time or place to place by the Court or Dow Corning without further notice other than by an adjournment announced in open court or as directed by the Court.  Further, the Settlement Agreements or Order may be modified upon the consent of Dow Corning and the Claimants before, during or as a result of the hearing, without further notice to any party in interest.